**2015 UT App 274**

## THE UTAH COURT OF APPEALS

L. BRADLEY BIEDERMANN, DEBBIE BURTON,
AND SONJA E. CHESLEY,
Appellants,
*v.*
WASATCH COUNTY,
Appellee.

Memorandum Decision
No. 20140689-CA
Filed November 12, 2015

Fourth District Court, Heber Department
The Honorable Steven L. Hansen
No. 140500046

Roger H. Hoole, Attorney for Appellants

Scott H. Sweat and Craig N. Chambers, Attorneys
for Appellee

JUDGE KATE A. TOOMEY authored this Memorandum Decision, in
which JUDGES J. FREDERIC VOROS JR. and MICHELE M.
CHRISTIANSEN concurred.

TOOMEY, Judge:

¶1      L. Bradley Biedermann, Debbie Burton, and Sonja E.
Chesley (collectively, Appellants) challenge the district court's
order dismissing their complaint for lack of standing. Appellants
sought to challenge the creation of a special service district in a
subdivision in which they each own several lots. But because
only Burton allegedly has property within the boundaries of the
special service district, we conclude that she alone has standing.
We therefore affirm in part and reverse in part.

BACKGROUND

¶2     "When determining whether a trial court properly granted a . . . motion to dismiss [under rule 12(b) of the Utah Rules of Civil Procedure], we accept the factual allegations in the complaint as true and consider them and all reasonable inferences to be drawn from them in a light most favorable to the plaintiff." *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 196 (Utah 1991). Accordingly, "we state the facts in a light most favorable to the party against which the . . . motion was brought." *Id.*

¶3     Appellants own property in Brighton Estates, a subdivision in Wasatch County (the County). In May 2013, the County Council adopted a resolution to propose establishing a special service district in the subdivision under Utah's Special Service District Act. *See* Utah Code Ann. §§ 17D-1-101 to -604 (LexisNexis 2013 & Supp. 2014). The resolution designated a name for the proposed district; specified the services it would offer; and described its proposed boundaries as the real property itemized in a list that identified by parcel, plat, and lot number each of the properties to be included in the proposed district. The resolution also identified a time and place for a public hearing concerning the proposed district and notified property owners that they could file protests against its establishment. In October 2013, the County approved the formation of the Brighton Estates Special Service District (the District) and adopted the boundaries proposed in the resolution.

¶4     Appellants filed a complaint in district court[1] seeking a declaratory judgment concerning whether the County properly established the District. The County filed a motion to dismiss the complaint pursuant to rule 12(b)(1) of the Utah Rules of Civil Procedure on the basis that Appellants lacked standing. The

---

1. The complaint was filed in Third District Court, but the case was transferred to Fourth District Court.

district court granted the County's motion because it determined that Appellants' properties were not "within the district boundaries" as required by Utah Code section 17D-1-212(b)(ii)(A). The court further determined that the District's provision of "redundant and intrusive services does not meet the individualized injury standard" necessary for traditional standing. This appeal ensued.

ANALYSIS

¶5     Appellants raise several arguments on appeal. They contend that the district court "failed to construe the facts [as] alleged in the Complaint and all reasonable inferences therefrom in the light most favorable to Appellants." Specifically, Appellants argue the court improperly concluded that their property "'was removed from the [D]istrict prior to finalization of the [D]istrict'" and ignored their allegation that they did not consent to its creation. Finally, they argue that the court erred in concluding that their alleged injury does not meet the "'individualized injury standard.'"

¶6     "[I]n Utah, . . . standing is a jurisdictional requirement." *Brown v. Division of Water Rights of Dep't of Nat. Res.*, 2010 UT 14, ¶ 12, 228 P.3d 747. "As such, a challenge to standing is generally directed at a plaintiff and questions whether that plaintiff meets the jurisdictional requirements to air a particular grievance in court." *Osguthorpe v. Wolf Mountain Resorts, LC*, 2010 UT 29, ¶ 14, 232 P.3d 999. Because standing is "an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also Brown*, 2010 UT 14, ¶ 15 ("[A]lthough a challenge to standing is jurisdictional and may be brought at any stage of the litigation, such a challenge is to be evaluated under the standard used for a dispositive motion at the relevant stage of litigation."). Because the County's challenge to Appellants' standing was brought before discovery,

Appellants' burden with respect to standing is the same as if they were facing a motion to dismiss for failure to state a claim upon which relief may be granted under rule 12(b)(6) of the Utah Rules of Civil Procedure. *See Brown*, 2010 UT 14, ¶¶ 15–16.

¶7      A complaint should be dismissed under rule 12(b) "only if it is clear that a party is not entitled to relief under any state of facts which could be proved." *Colman v. Utah State Land Bd.*, 795 P.2d 622, 624 (Utah 1990). Thus, "we look solely to the material allegations of [Appellants'] complaint," and not to evidence presented outside those allegations. *See id.* But although we accept factual allegations in the complaint as true, we need not similarly "accept legal conclusions or opinion couched as facts." *Koerber v. Mismash*, 2013 UT App 266, ¶ 3, 315 P.3d 1053 (per curiam).

¶8      In relevant part, Appellants' complaint alleges:

[1] Plaintiff Biedermann owns Lot 178 in Phase 2, Plaintiff Burton owns Lots 3, 53, 54 and 55 in Phase 1 and Plaintiff Chesley owns Lots 7, 8 and 9 in Phase 4a in Brighton Estates, as shown on the map attached as Exhibit A.

[2] On October 2, 2013, the Wasatch County Council approved Resolution 13-06, calling for the formation of the [District].

[3] The geographical boundaries of the [District] are roughly based on a straw vote of Brighton Estate property owners taken by Wasatch County about a year and a half earlier when it considered a possible [special service district].

[4] The straw vote resulted in a roughly even split between property owners in favor of (the blue lots), and those opposed to (the yellow lots), the proposed [District], as shown on [the map attached as] Exhibit D.

[5] The boundaries of the [District] include land owned by Plaintiffs Biedermann, Burton and Chesley in that their land represents islands of yellow lots within a sea of blue lots, as shown by [the map attached as] Exhibit E.

[6] The land owned by Plaintiffs Biedermann, Burton and Chesley that is included in the [District's boundaries] will not be benefitted by the duplicate service that the special service district is proposed to provide.

[7] Not only were Plaintiffs, and other similarly situated property owners, prevented from voting on the proposed [District], Plaintiffs have never consented to the inclusion of their land in the checkerboarded boundaries of the [District] as required by Utah law.

¶9     Attached to and referenced in the complaint are three maps of the subdivision. One map shows all subdivision lots, grouped by "Phase." The second map, dated December 13, 2012, is labeled "Proposed Boundary Map . . . Brighton Estates Special Service District" and purports to show, lot by lot, which are proposed for inclusion in the District's boundaries, and which are not. A third map, dated May 15, 2013, is labeled "Proposed Boundary Map . . . Brighton Estates Special Service District," and also purports to show, lot by lot, which are proposed for inclusion in the District's boundaries, and which are not.[2]

---

2. We observe that the lots identified for inclusion in the District in December 2012 differ to some extent from those identified for inclusion in May 2013, but this incongruity is immaterial to our analysis.

¶10 The resolution is also attached to and referenced in the complaint, and it incorporates a proposed notice listing—by individual parcel, plat, and lot numbers—of the properties to be included in the District. The list is not comprised of all lots in the subdivision, but rather is a subset of those lots in the County which would receive the proposed services.

¶11 Appellants argue the district court failed to properly accept their allegation that the District's boundaries include their lots. The complaint alleges that Appellants own Lot 178 in Phase 2; Lots 3, 53, 54, and 55 in Phase 1; and Lots 7, 8, and 9 in Phase 4a. But with the exception of Lots 3, 53, and 54, which Burton purportedly owns, none of the other lots allegedly owned by Appellants is on the list of properties expressly "within the boundaries of the District" as described by the County's resolution. Thus, the resolution's list directly contradicts Appellants' allegation that their properties are within the District's boundaries. And, in any event, their allegation that "[t]he boundaries of the [District] include land owned by [Appellants]" is based on their interpretation of Utah Code section 17D-1-212, and as such is merely a legal conclusion couched as fact. Because the court need not accept legal conclusions as true, and because the complaint rested upon a document that excluded from the District most of the properties allegedly owned by Appellants, we conclude the court did not improperly construe Appellants' allegations.[3] *See Koerber*, 2013 UT App 266, ¶ 3.

---

3. Appellants also briefly argue the district court erred in construing their allegation that they "never consented to the inclusion of their land in the checkerboarded boundaries of the [District] as required by Utah law." But the court made no findings to this effect, and in any event, whether they consented is relevant only if their property is both within the District's boundaries and not benefitted by its services. *See* Utah Code

(continued…)

¶12    Next, Appellants argue the district court erred in concluding that because their property "'was removed from the [D]istrict prior to finalization,'" they lack standing to challenge it. We disagree.

¶13    The district court's conclusion relied upon Utah Code section 17D-1-212, which provides that a person may challenge the creation of a special service district if:

> (a) the person filed a written protest . . . ;
> (b) the person . . .
>> (ii)(A) is an owner of property included *within the boundary of the special service district*; and
>>
>> (B) alleges in the action that . . . (I) the person's property will not be benefitted by a service that the special service district is proposed to provide; or (II) the procedures used to create the special service district violated applicable law; and
> (c) the action is filed within 30 days after the date that the legislative body adopts a resolution or ordinance creating the special service district.

Utah Code Ann. § 17D-1-212(1) (LexisNexis 2013) (emphasis added).

¶14    Appellants do not argue that the statute is ambiguous or that their lots are improperly included on the resolution's list of properties within the District's boundaries. Rather, they contend their "properties physically remain within the [District's] boundaries" because their lots are surrounded on all sides by properties identified by the list. Indeed, Appellants concede,

-----

(…continued)
Ann. § 17D-1-202(2)(c) (LexisNexis 2013). Accordingly, we decline to address this argument further.

"Most of the . . . lots [omitted from the list] have no legal standing to participate in this action because their lots are not islands within the boundaries of the [District]." This demonstrates the crux of their argument: properties omitted from the resolution's list are nevertheless "within the boundary of the special service district" if they are physically surrounded on all sides by properties expressly identified on the list.

¶15    Appellants have not provided a reasoned legal analysis of the applicable statutes or case law. Instead, their argument relies almost exclusively on a color-coded map of the subdivision showing which properties are within the district's boundaries, and which are not.[4] It shows that the District does not have borders that adjoin one another but is instead a patchwork of scattered lots. Some areas of the subdivision map show that the District lots comprise entire sections of the subdivision or sit adjacent to lots not included in the District, but in a few places the District lots completely surround lots not included in the District.

¶16    "When interpreting statutory language, we generally seek to read each term according to its ordinary and accepted meaning." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 18, 267 P.3d 863 (citation and internal quotation marks omitted). "When the meaning of [a] statute can be discerned from its language, no other interpretive tools are needed." *Id.* ¶ 15 (alteration in original) (citation and internal quotation marks omitted). The operative term here is "boundary." The County defined the District's boundaries as those properties identified on the resolution's list. Appellants suggest the boundary is something physical created by the "geographical boundaries" of properties on the resolution's list.

---

4. On the maps, properties not included in the District are colored yellow and those within the District are colored blue.

¶17　The term "boundary" is "something that indicates . . . a limit" or "something that marks a bound." *Webster's Third New Int'l Dictionary* 260 (1966). It may be natural or artificial, concrete or abstract. Because the term has more than one ordinary meaning, we interpret it "based upon the context in which it is used." *Marion Energy*, 2011 UT 50, ¶¶ 18–20.

¶18　Utah Code section 17D-1-202 imposes some limits on the creation of a special service district. For example, the proposed district cannot include land already receiving services from a special service district nor can it include properties that will not be benefitted by the services being offered. Utah Code Ann. § 17D-1-202(2) (LexisNexis 2013). But the statute also provides that "the boundary of a proposed special service district may include all or part of the area within the boundary of the county or municipality that creates the special service district." *Id.* § 17D-1-202(1). Significantly for this case, "[a]ll areas included within a special service district need not be contiguous." *Id.* § 17D-1-202(3). In other words, other limitations in section 17D-1-202 notwithstanding, the special service district's boundaries can be dispersed throughout all or part of the County.

¶19　Even if we indulge Appellants' argument that they own property "within the boundary of" this special service district because their lots lie physically within its outer boundary, we are not convinced. Their lots are surrounded by, not included within, the District's boundaries. They are enclaves, lying inside the District's outer boundary, but outside its inner boundary.[5]

_____

5. Appellants' properties could therefore be compared to the Most Serene Republic of San Marino, a microstate surrounded by Italy. *See San Marino Country Profile—Overview*, BBC (Feb. 10, 2015), http://www.bbc.com/news/world-europe-17842338. Although the twenty-three-square-mile republic is surrounded on all sides by Italy, it is neither a part of Italy nor a part of the European Union. *See id.*

¶20 Nothing in the statute prohibits the County from creating a district that results in islands or peninsulas of property excluded from the district, and indeed it expressly provides that the areas "need not be contiguous." *See id.* Because of this, even though this produces what appears to be an unevenly distributed patchwork of lots, we are not persuaded that the properties excluded from the resolution's list—some of which are entirely surrounded by the District lots—are nevertheless within the District's boundaries.

¶21 In sum, the court did not err when it concluded that Biedermann's and Chesley's properties and one of Burton's lots were not within the District's boundaries, because the County had removed them. Nevertheless, Burton has alleged that she owns lots 3, 53, and 54 in Phase 1 in the subdivision, and these are on the list of properties within the District's boundaries. The County argues Burton does not in fact own these lots,[6] but we must accept this allegation as true. *See St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 196 (Utah 1991). Accordingly, because we assume Burton owns lots 3, 53, and 54 and because they are included within the District's defined boundaries, we reverse the court's dismissal with regard to the claims related to these properties only.

¶22 Finally, Appellants argue the district court erred in concluding that their alleged injuries do not meet the "'individualized injury standard'" for traditional standing. Rule 24(a)(9) of the Utah Rules of Appellate Procedure requires "not just bald citation to authority but development of that authority and reasoned analysis based on that authority." *State v. Thomas*, 961 P.2d 299, 305 (Utah 1998). Appellants' claim lacks any

---

6. In the district court, and on appeal, the parties have suggested that the complaint erroneously identified Burton's lots and could be amended with the correct lot numbers. The complaint has not been amended, however, and we are constrained in our analysis to what was actually alleged, not what should have been alleged.

meaningful analysis: aside from quoting and identifying the elements of standing in Utah Code section 17D-1-212, Appellants merely recite their complaint's allegations and assert that they have standing. They do not cite authority for or analyze the "individualized injury standard." Indeed, except for a reference to the allegation that the District will not benefit their properties, Appellants do not even mention their injuries, let alone discuss them with any particularity. Thus, we conclude that this argument is inadequately briefed and decline to address it further. *See* Utah R. App. P. 24(a)(9).

CONCLUSION

¶23   The district court did not mischaracterize or misconstrue the facts alleged in the complaint and, based on the plain language of the applicable statutes, did not err in determining that only the properties on the resolution's list are within the District's boundaries. Accordingly, property owners whose lots are not identified on the resolution's list lack standing under Utah Code section 17D-1-212(1)(b)(ii)(A). Therefore, with regard to Biedermann and Chesley, we affirm the court's order. But, with regard to Burton, because she alleged ownership of lots identified on the resolution's list, we reverse and remand to the district court for further proceedings related to her claims.

_____