2018 UT App 172

## THE UTAH COURT OF APPEALS

CLAUDE C. BLANCH,
Appellant,
*v.*
JAN FARRELL, MARILYN ROYCE, DONENE BRISCOE,
AND BARBARA STUART,
Appellees.

Opinion
No. 20160792-CA
Filed September 7, 2018

Second District Court, Ogden Department
The Honorable Mark R. DeCaria
No. 150907627

Jason M. Yancey, Richard W. Jones, Taylor R. Jones,
Bryce M. Froerer, and Zane S. Froerer, Attorneys
for Appellant

Paul K. Bachman and Dana T. Farmer, Attorneys
for Appellees

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES KATE A. TOOMEY and DAVID N. MORTENSEN concurred.

POHLMAN, Judge:

¶1 Claude C. Blanch, Jan Farrell, Marilyn Royce, Donene Briscoe, and Barbara Stuart are all equal members of a dissolved member-managed limited liability company named Five Blanch Property LLC (the Company). When four of the five members agreed to list certain assets for sale as part of the Company's winding up, Blanch objected, filing a petition opposing the sale and seeking to partition one-fifth of the assets for himself. The district court dismissed Blanch's petition with prejudice. Blanch appeals, and we affirm.

### BACKGROUND[1]

¶2    The family of the parties—Blanch, Farrell, Royce, Briscoe, and Stuart—historically owned certain assets, including real property in Weber County, Utah, and a number of shares in an irrigation company (collectively, the Assets). In 2005, the Assets were conveyed to the Company, a then newly formed, member-managed limited liability company.

¶3    Each party is an equal member of the Company. Though the Company never executed an operating agreement, its articles of organization stated that the Company would exist for three years, during which time the members were to meet and determine how to manage the Assets. The members held meetings, but they never agreed on the management of the Assets.

¶4    In 2008, the Company expired with the Assets still titled in its name. Since its dissolution, however, the Company has not wound up its affairs or distributed the Assets. In October 2015, as part of its winding up, all of the Company's members except Blanch voted to list the Assets for sale.

¶5    Shortly thereafter, Blanch filed suit against Farrell, Royce, Briscoe, and Stuart (collectively, Appellees). Blanch petitioned the court to stop the sale of the Assets and to carve out his twenty-percent interest so that he could keep that portion in his name. As an exhibit to his original petition, Blanch attached a

---

1. Because this case is before us on appeal from the motion to dismiss Blanch's petition for failure to state a claim, we, like the district court, "accept the factual allegations in the complaint as true and consider them and all reasonable inferences to be drawn from them in a light most favorable to the plaintiff." *Biedermann v. Wasatch County*, 2015 UT App 274, ¶ 2, 362 P.3d 287 (quotation simplified). Accordingly, we state the facts in a light most favorable to Blanch. *See id.*

document titled, "Written Consent of More Than 2/3 of the Members of [the Company]" (the Written Consent).

¶6    The Written Consent was signed in October 2015 by Appellees, who together held an eighty-percent interest in the Company. In its recitals, the Written Consent stated that Appellees desired "to wind up the affairs of the Company"; "to sell all of the [Assets] owned by the Company as part of the winding-up of the Company, and thereafter distribute the net proceeds of the sale to the members . . . according to their interests"; and "to designate Jan Farrell to negotiate and enter into any and all agreements necessary to sell all of the [Assets]." The Written Consent stated that Appellees adopted the resolutions to, among other things, authorize Farrell to negotiate agreements and take actions necessary to sell the Assets.

¶7    Blanch filed an amended petition in January 2016 in which he noted that Appellees "have attempted to list all of the [Assets] . . . for sale," explaining that they "have proposed and are desirous of selling [the Assets] and distributing the cash sales proceeds." Blanch alleged that under the Utah Revised Uniform Limited Liability Company Act, effective January 1, 2016 (the New Act), all members of the Company had to unanimously agree to sell the Assets and that because he did not consent, Appellees lacked authority to approve the sale. *See generally* Utah Code Ann. §§ 48-3a-101 to -1405 (LexisNexis 2015).

¶8    Blanch asked the court to enjoin the sale of the Assets and to require that any sale be approved by the court or the unanimous agreement of the Company's five members. He also asked the court to order the settling of the Company's capital accounts and the distribution of the Assets in proportion to the members' respective interests. Alternatively, Blanch asked the court to partition the Assets, separating his twenty-percent share.

¶9    Appellees moved to dismiss Blanch's petition, asserting that he had failed to state a claim upon which relief could be granted. In support, Appellees attached the Written Consent and

asserted that they had authority to sell the Assets and that the Written Consent, which resolved to sell the Assets, was valid. According to Appellees, when they signed the Written Consent in October 2015, the Utah Revised Limited Liability Company Act (the Old Act) applied. *See generally id.* §§ 48-2c-100 to -1902 (2010). And rather than requiring the unanimous approval of members to sell the Company's assets, the Old Act required only two-thirds of its members to act. *Id.* § 48-2c-803(3). Accordingly, Appellees contended that because they held eighty percent of the interest in the Company, the Written Consent was properly executed and was not voided by the New Act.

¶10   In so arguing, Appellees noted that the Written Consent expressly stated that "the authority given [under the Written Consent] shall be effective until revoked by [Appellees] and shall continue notwithstanding the automatic application of [the New Act] on January 1, 2016." Although Appellees "fully acknowledge[d] that [the New Act] now governs the wind-up of [the Company]," they contended that "the Written Consent remains effective as to the authorization of [the Company] to sell the Assets in the wind-up" and that Blanch had failed "to allege any facts to show that the Written Consent was not authorized at the time of its execution."

¶11   In the alternative, Appellees asserted that, even if the Written Consent was no longer effective, the remedy Blanch sought—the distribution of the Assets in the Company's winding up—was barred under the New Act, given that those distributions "must be paid in money." *See id.* § 48-3a-711(4) (2015). Appellees further argued that the Company owned the real property at issue and that because Blanch was not a joint tenant or tenant in common, he could not bring an action to partition that real property.

¶12   The district court granted Appellees' motion. The court first determined that because the Company had expired, it "ha[d] no power other than to wind up its affairs, pay its bills, and distribute its assets." The court then determined that the Old Act controlled, that "no language within [the New Act] ha[d]

been cited which [made] its provisions retroactive," and that the Company's members had not agreed to be bound by the New Act. The court explained that under the Old Act, "members holding at least two-thirds interest in the company are required to bind [the Company]" and that, in this case, "a written consent was signed by all of the members . . . other than [Blanch], evidencing four-fifths of the voting members, to list [the Assets] for sale and then to distribute the assets as the last step to winding up." The district court then reasoned that "four-fifths is 80%, sufficiently in excess of two-thirds of the voting members," and that the members signed the Written Consent in October 2015—before the application of the New Act to the Company. Further, the court determined that the Written Consent was "a permitted function" and the controlling member-managers had "the power to wind up [the Company] as they [saw] fit, including the sale of [the Assets], payment of all bills and obligations, and distribution of the proceeds to the members."

¶13  Based on these determinations, the district court concluded that Blanch could not "legally prevail as it pertains to the objection to sale and to the partitioning of [the Assets]." Additionally, it concluded that Blanch "was not a joint tenant or a tenant in common owner of the real property" and that the Company's ownership of the real property "excluded that possibility [of partition]." Accordingly, the court dismissed Blanch's petition with prejudice. Blanch appeals.

ISSUE AND STANDARD OF REVIEW

¶14  Blanch contends that the district court erred in granting Appellees' motion to dismiss his petition. "A Rule 12(b)(6) motion to dismiss admits the facts alleged in the complaint but challenges the plaintiff's right to relief based on those facts." *Oakwood Village LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 8, 104 P.3d 1226 (quotation simplified). "Under a rule 12(b)(6) dismissal, our inquiry is concerned solely with the sufficiency of the pleadings, and not the underlying merits of the case." *Id.* (quotation simplified). We assume the truth of the factual allegations in the

complaint and draw "all reasonable inferences therefrom in the light most favorable to the plaintiff." *Hudgens v. Prosper, Inc.*, 2010 UT 68, ¶ 14, 243 P.3d 1275 (quotation simplified). "We review a decision granting a motion to dismiss for correctness, granting no deference to the decision of the district court." *Bylsma v. R.C. Willey*, 2017 UT 85, ¶ 10, 416 P.3d 595 (quotation simplified). We likewise review for correctness the district court's subsidiary legal determinations, including its interpretation and application of statutes. *See DePatco, Inc. v. Teton View Golf Estates, LLC*, 2014 UT App 266, ¶ 6, 339 P.3d 126 ("The proper interpretation and application of a statute is a question of law, and we afford no deference to the [district] court in reviewing its interpretation of applicable statutes." (quotation simplified)).

ANALYSIS

¶15 Blanch challenges the district court's dismissal of his petition on a number of grounds. We begin by addressing his argument regarding the propriety of the district court's consideration of the Written Consent in resolving Appellees' motion to dismiss. We then turn to Blanch's arguments regarding the enforceability of the Written Consent. Finally, we address his contention that the district court erred in dismissing his petition without considering his request for judicial supervision of the Company's winding up.[2]

I. The District Court's Consideration of the Written Consent on Appellees' Motion to Dismiss

¶16 Blanch first contends that in ruling on Appellees' motion to dismiss, the district court erred either by failing to exclude

---

2. Because Blanch does not raise any specific arguments connected to the district court's dismissal of his claim for partition, we do not address that claim further.

documents outside of his petition or by failing to convert the motion to one for summary judgment. *See generally* Utah R. Civ. P. 12(b) (explaining that if, on a motion to dismiss for failure to state a claim upon which relief can be granted, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56"). He focuses this challenge on the district court's consideration of the Written Consent itself, asserting that the court's decision is unsustainable without reference to it. Appellees counter that the Written Consent was properly before the court because it was either referenced in or was central to Blanch's petition.

¶17 This court generally will not consider an issue on appeal unless it has been preserved or the appellant asserts that a valid exception to the preservation rule applies. *See State v. Johnson*, 2017 UT 76, ¶ 18, 416 P.3d 443. To preserve an issue, the appellant must present it to the district court "in such a way that the court has an opportunity to rule on it." *Id.* (quotation simplified). This means that "the issue must be specifically raised, in a timely manner, and must be supported by evidence and relevant legal authority." *Donjuan v. McDermott*, 2011 UT 72, ¶ 20, 266 P.3d 839.

¶18 Here, Blanch attached the Written Consent as an exhibit to his original petition, and then he alleged in his amended petition that Appellees "have proposed and are desirous of selling [the Assets] and distributing the cash sales proceeds" and that they "have attempted to list all of the assets . . . for sale." Appellees responded with a motion to dismiss and attached the Written Consent.

¶19 But Blanch did not object to Appellees' reliance on the Written Consent and he never asserted that the district court could not consider it in ruling on the motion to dismiss or that the court should treat the motion as one for summary judgment under rule 56. As a result, Blanch did not raise the issue of whether the Written Consent was a matter outside the pleading requiring the motion to be converted, and he did not give the

district court the opportunity to rule on it. *See Johnson*, 2017 UT 76, ¶ 18. He therefore did not preserve this issue for appeal.[3]

## II. The Enforceability of the Written Consent

¶20 Blanch contends that the Written Consent is unenforceable, raising several arguments in support. We first identify which of his arguments have been preserved. We then address whether the authority granted to Farrell under the Written Consent—to sell the Assets for the purpose of winding up the Company—survives the application of the New Act.

### A.     Whether the Written Consent Was Void Ab Initio

¶21   On appeal, Blanch makes three arguments seeking to undermine the validity of the Written Consent. First, Blanch suggests that the Written Consent was void ab initio when signed "because [it] is really a defective attempt to amend the Articles of Organization and change the management structure from member-managed to manager-managed," and it therefore "would have been deemed ineffective since it would require unanimous consent of the members" to make such changes. Second, Blanch asserts that the Written Consent was adopted "without any notice" to him, as required by the Old Act, and that this lack of notice "invalidates the Written Consent." Third, Blanch complains that, because two of the signatures on the Written Consent were those of "assignees/transferees of the members who could not [validly provide] consent," the "Written Consent is not valid and never was." But he did not make any of these arguments to the district court and thus he has not preserved them for appeal. Because he did not preserve these arguments or assert any exception to the preservation rule, we

---

3. Given Blanch's failure to properly challenge the district court's consideration of the Written Consent in ruling on the motion to dismiss, we likewise consider the Written Consent in reviewing the district court's decision.

do not consider them further. *See State v. Johnson*, 2017 UT 76, ¶ 18, 416 P.3d 443.

B.      The Continuing Force of the Written Consent

¶22    Blanch next challenges the district court's conclusion that the Written Consent has continuing force, thus giving Farrell the authority to carry out the sale of the Assets even after the New Act became effective. According to Blanch, the district court erred in concluding that the Written Consent has binding "effect after January 1, 2016 when the New Act required the approval of all members" for such an action. He asserts that "at best, the Written Consent was [in] effect until it was superseded by the terms and provisions of the [New] Act." In other words, "if the Written Consent was ever valid . . . , it was only valid until January 1, 2016—after which time, the New Act and its provisions applied to all [limited liability companies]." By ruling that the Written Consent is still operative, Blanch asserts, "the Court is allowing the Company to continue . . . operat[ing] under the [Old] Act."

¶23    To resolve this issue, we must answer two questions. The first is whether the Written Consent—representing the Company's approval of the sale of the Assets as part of its winding up—required the unanimous consent of its members or the consent of only two-thirds of its members. The answer to this question turns on whether the Written Consent had to comply with the voting requirements of the Old Act or the New Act. The second question is whether the New Act, which became effective as to all limited liability companies three months after the Written Consent was passed, deprived the Written Consent of its force as of January 1, 2016.

¶24    For a member-managed limited liability company like the Company, the Old Act provided that "authorizing a member or any other person to do any act on behalf of the company that is not in the ordinary course of the company's business" required "the affirmative vote, approval, or consent of members holding 2/3 of the profits interests in the company." Utah Code Ann.

§ 48-2c-803(3)(a)(i) (LexisNexis 2010). In contrast, the New Act provides that "[a]n act outside the ordinary course of the activities and affairs of the limited liability company may be undertaken only with the affirmative vote or consent of *all members*." *Id.* § 48-3a-407(2)(d) (2015) (emphasis added). The parties agree that authorizing the sale of assets as part of the winding-up process falls outside the ordinary course of business.

¶25 Originally passed in 2013, the New Act was phased in gradually. *See generally id.* §§ 48-3a-101 to -1405. Section 48-3a-1405 sets forth the New Act's scheduled applicability. It provides that before January 1, 2016, the New Act "governs only: (a) a limited liability company formed on or after January 1, 2014; and (b) . . . a limited liability company formed before January 1, 2014, which elects, in the manner provided in its operating agreement or by law for amending the operating agreement, to be subject to [the New Act]." *Id.* § 48-3a-1405(1); *see also id.* § 48-2c-100 (Supp. 2013) ("Until [the Old Act] is repealed January 1, 2016, [it] applies only to a limited liability company formed on or before December 31, 2013, that has not elected to be governed by [the New Act], as provided in Section 48-3a-1405."). On or after January 1, 2016, however, the New Act "governs *all* limited liability companies." *Id.* § 48-3a-1405(2) (2015) (emphasis added).

¶26 Neither one of the circumstances under subsection 48-3a-1405(1)(a) or (b) is applicable here. The Company was formed before January 1, 2014, and, as Blanch explains, by October 2015, "the Company had not chosen to be governed by [the New] Act and the effective date imposing [the New] Act had yet to occur." Thus, at the time Appellees approved the Written Consent in October 2015, the Old Act still governed,[4]

---

4. The Old Act allowed limited liability companies, through the articles of organization or an operating agreement, to modify the applicable default rule requiring "the affirmative vote, approval, or consent of members holding 2/3 of the profits interests in the

(continued…)

and because Appellees hold four-fifths of "the profits interests in the company," they had more than the necessary two-thirds vote to approve the Written Consent. *See id.* § 48-2c-803(3) (2010). Accordingly, the Written Consent complied with the voting requirements of the Old Act.

¶27    The Written Consent also appears to comply with the Old Act's provisions regarding the designation of an agent for the winding-up process. Utah Code section 48-2c-1303 directed that for a member-managed company, "the following persons . . . shall have the right to wind up the business of a dissolved company: . . . first, the existing members or, second, an agent designated by the existing members." *Id.* § 48-2c-1303(1)(b). That section further provided that the

> person who winds up the business and affairs of a dissolved company . . . shall . . . become a trustee for the members and creditors of the company and, in that capacity, may sell or distribute any company property discovered after dissolution, convey real estate, and take any other necessary action on behalf of and in the name of the company.

---

(…continued)
company." Utah Code Ann. § 48-2c-803(3)(a)(i) (LexisNexis 2010); *see also id.* § 48-2c-803 (setting forth the default rules for management by members "unless otherwise provided in this chapter, in the articles of organization, or an operating agreement"); *OLP, LLC v. Burningham*, 2008 UT App 173, ¶ 18, 185 P.3d 1138 (noting that "the provisions of the LLC Act serve as default positions that govern an LLC if its members do not include contrary language in their operating agreement or in the LLC's articles of organization"), *aff'd*, 2009 UT 75, 225 P.3d 177. The Company's articles of organization made no such modification, and the Company did not have an operating agreement. Consequently, the Old Act's default rule applies.

*Id.* § 48-2c-1303(2)(a). This statute thus authorized the members of this dissolved company to designate Farrell as an agent to wind up the Company and also authorized Farrell to then sell the Assets.

¶28    Blanch contends that when the New Act became effective as to all limited liability companies on January 1, 2016, the Written Consent became void, thereby depriving Farrell of any authority to carry out the sale of the Assets, and that the sale of the Assets would require the unanimous approval of the Company's members under the New Act. We read section 48-3a-1405 to mean that, after January 1, 2016, the New Act, including its unanimity requirement under section 48-3a-407, applies to all limited liability companies and all actions they take. But we see nothing in section 48-3a-1405's plain language or anything else in the New Act that supports the proposition on which Blanch's argument depends, namely, that the New Act's broad implementation on January 1, 2016, had the effect of invalidating previous actions taken by a limited liability company. *See generally Bagley v. Bagley*, 2016 UT 48, ¶ 10, 387 P.3d 1000 (stating that "the primary objective of statutory interpretation is to ascertain the intent of the legislature" and that "since the best evidence of the legislature's intent is the plain language of the statute itself, we look first to the plain language of the statute" (quotations simplified)). Moreover, Blanch has not identified any pertinent authority in support of his reading of the New Act.[5] *See Bank of Am. v. Adamson*, 2017 UT

---

5. Even if the New Act somehow invalidated the Written Consent and the authority granted thereunder to proceed with the sale of the Assets, Blanch has not demonstrated that he would be entitled to the relief he seeks, that is, the distribution of the Assets. To the contrary, the default rules under the New Act provide that, in winding up a company, any surplus assets must be distributed "in equal shares among members and dissociated members" and all such distributions "must be *paid in money*." Utah Code Ann. § 48-3a-711(2)–(4) (LexisNexis 2015) (emphasis

(continued…)

2, ¶ 13, 391 P.3d 196 (explaining that an appellant will not carry his burden of persuasion on appeal if he fails to "cite the legal authority on which [his] argument is based and then provide reasoned analysis of how that authority should apply in [this] particular case"). We therefore conclude that the district court did not err in deciding that Blanch did not state a claim in light of the Written Consent.

### III. Blanch's Request for Judicial Supervision

¶29 Finally, Blanch contends that the district court erred by dismissing his alleged claim for judicial supervision of the Company's winding up. In particular, he asserts that, to state such a claim under Utah Code section 48-3a-703 of the New Act, "all [he] was required to [do was] plead good cause" and that the petition's factual allegations constituted "prima facie good cause to have the Court supervise the winding up process."

¶30 Section 48-3a-703 of the New Act provides that a "district court may order judicial supervision of the winding up of a dissolved limited liability company, including the appointment of a person to wind up the limited liability company's activities and affairs: (a) on application of a member, if the applicant establishes *good cause*." Utah Code Ann. § 48-3a-703(5)(a) (LexisNexis 2015) (emphasis added).

¶31 Blanch's amended petition labeled a cause of action "Dissolution of [the Company]," and it requested that the district court require "the winding up of [the Company to] follow the applicable statute found in [section] 48-3a-703; [and] that the assets be distributed to the members of the expired [Company] in proportion to their respective interests." Although

---

(…continued)
added). Given this provision, we agree with Appellees that Blanch has not explained how the court could give him "land and water in lieu of money."

Blanch sought judicial relief, he did not specifically ask the court to oversee the winding-up process. But even if Blanch's claim could be construed as an application for judicial supervision of that process, his request was tied to his attendant request for distribution of the Assets, which was based on his contentions that they could not be sold without his approval and that the Written Consent has no force or effect under the New Act. Blanch did not alert the court to the fact that he sought judicial supervision of the process generally, as he now seems to claim on appeal. *See generally State v. Johnson*, 2017 UT 76, ¶ 18, 416 P.3d 443 (explaining that to preserve an issue, the appellant must present it to the district court "in such a way that the court has an opportunity to rule on it" (quotation simplified)). Thus, having rejected Blanch's claims for distribution and partition of the Assets, we cannot fault the district court for dismissing his petition without addressing whether he had demonstrated good cause to warrant ongoing judicial supervision of the winding-up process.[6]

---

6. In his reply brief, Blanch complains that the district court erred in dismissing his petition *with prejudice*. We do not consider issues that are raised for the first time in a reply brief. *See Allen v. Friel*, 2008 UT 56, ¶ 8, 194 P.3d 903. Blanch noted in his opening brief that "by dismissing the claims with prejudice, the [District] Court has permanently barred [him] from requesting the Court judicially administer the winding up of the company." But he does not assert until his reply brief that the district court committed error in this regard. As a result, we do not consider this issue further, except to note that at oral argument before this court, Appellees' counsel stated, "Even if [this court affirms] on the Written Consent, if there's some basis for [Blanch] to come in and still ask for judicial dissolution with the Written Consent in place, . . . theoretically, . . . he should have the opportunity to be able to do that. . . . His ability to ask for supervision, as long as he can state good cause and the court finds good cause, is there."

CONCLUSION

¶32    We conclude that Blanch has waived all but one of his arguments challenging the district court's dismissal of his petition by failing to preserve them. On his only properly presented issue, we conclude that Blanch has not carried his burden of demonstrating that the district court erred. Accordingly, we affirm.

—————