**2024 UT App 80**

# THE UTAH COURT OF APPEALS

GREG GRAVES,
Appellant,
*v.*
UTAH COUNTY GOVERNMENT, NATHAN IVIE, CAMMIE TAYLOR, AND
WILLIAM LEE,
Appellees.

Amended Opinion*
No. 20200296-CA
Filed May 23, 2024

Fourth District Court, American Fork Department
The Honorable Robert C. Lunnen
No. 190100114

Ryan J. Schriever, Attorney for Appellant

Andrew M. Morse and Andrew L. Roth, Attorneys
for Appellees

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUSTICE JILL M. POHLMAN and SENIOR JUDGE KATE
APPLEBY concurred.[1]

---

* The Appellees filed a petition for rehearing after we published our original opinion. The points made in the petition were well taken, and we granted the petition. As a result, our previous Opinion dated July 6, 2023, is withdrawn, and we issue this Amended Opinion in its place.

1. Justice Jill M. Pohlman began her work on this case as a member of the Utah Court of Appeals. She became a member of the Utah Supreme Court thereafter and completed her work on the case sitting by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 3-108(4). Senior Judge Kate Appleby sat by special assignment as authorized by law. *See generally id.* R. 11-201(7).

CHRISTIANSEN FORSTER, Judge:

¶1    Cammie Taylor lodged a complaint against then-county commissioner Greg Graves, alleging that he sexually harassed and retaliated against her while she was employed as the human resources director for Utah County (the County). The County hired an independent investigator, who produced an internal report (the report) to address Taylor's allegations. In response to public records requests from two media outlets, the other two county commissioners voted to disclose redacted copies of Taylor's complaint and the report. After the vote, the two commissioners communicated with the press and the public regarding the accusations and the investigation, publicly named Graves as the subject of the report, and called on him to resign.

¶2    Graves sued the County, the two commissioners, and Taylor, bringing causes of action for false light invasion of privacy, defamation, slander/libel per se, intentional infliction of emotional distress, and negligent infliction of emotional distress. The district court granted a motion to dismiss Graves's complaint, and Graves appealed. We affirm.

BACKGROUND

¶3    We recite here the relevant allegations Graves made in his civil complaint filed in the district court.

¶4    Graves served as a county commissioner for three years, from 2015 to 2018. In October 2017, Taylor, a county employee, filed a "Notice of Charge of Discrimination" with the Utah Antidiscrimination and Labor Division of the Utah Labor Commission (UALD complaint) alleging Graves had sexually harassed and discriminated against her. Taylor also sent a notice of claim to the County. In response, Graves asserted that "Taylor fabricated allegations of sexual harassment against [him] for malicious and improper purposes, including . . . retaliation,

leverage to avoid termination, and/or leverage to force a settlement with [the] County when she was terminated from her job."

¶5 The County hired an investigator to conduct a factual inquiry into Taylor's allegations of sexual harassment and gender discrimination and prepare the report. The investigator did not conduct a legal analysis of the merits of the harassment and retaliation claims made in Taylor's UALD complaint. But based upon the report, Graves asserted that the investigator was "unable to conclude" that Graves had "engaged in any unwelcome sexual or suggestive behavior or conduct toward" Taylor.

¶6 Graves's district court complaint alleged that around this time, Taylor contacted media reporters to inform them of the UALD complaint. Subsequently, two media outlets made public records requests under the Government Records Access and Management Act (GRAMA), *see generally* Utah Code §§ 63G-2-101 to -901, for "the complaint against Commissioner Graves," "[a]ll emails sent between Utah County Commissioner Greg Graves and Cammie Taylor, the Utah County personnel director," and "any complaint of sexual harassment against Utah County Commissioner Greg Graves." The County initially denied the GRAMA requests because it had not yet received the UALD complaint and "there were no documents to produce." Once the County received the UALD complaint, it continued to deny the requests pending an investigation.

¶7 County commissioners Nathan Ivie and William Lee (the Commissioners) later held a GRAMA appeal hearing regarding the documents that had been requested related to Graves's alleged misconduct. The Commissioners voted to release the requested documents but to redact personal identification information from them. Immediately after the hearing, however, Ivie addressed the media, announcing that the report was about

Graves and that Ivie would release a prepared statement on his official social media page. Lee reposted Ivie's prepared statement to his own official social media page.

¶8      The County released a partially redacted UALD complaint, but Graves's name was included in it. The next day, the County released the report, in which all the names—including Graves's—and identifying information were redacted. Graves alleged that the Commissioners "knew or should have known" that publishing the UALD complaint (with his name included) "without simultaneously releasing the [report] would portray Graves in a false light in that people would falsely believe he was guilty of sexual harassment." Following the release of the UALD complaint, the media reported extensively about the allegations of Graves's sexual harassment, leading to calls for his resignation.

¶9      Graves's lawsuit against the Commissioners, Taylor, and the County alleged that Taylor's accusations against him were false and that she acted with malice in asserting claims of sexual harassment and gender discrimination. Graves also claimed that the Commissioners "acted with malice in publishing the false statements." He asserted that this conduct "irreparably damaged" his reputation, resulting in loss of employment opportunities, marital problems, bullying of his children, and exacerbation of a preexisting traumatic brain injury. He sought economic and non-economic damages.

¶10     In response, the County, the Commissioners, and Taylor filed a motion to dismiss for failure to state a claim on which relief could be granted, *see* Utah R. Civ. P. 12(b)(6), arguing that Graves's claims were barred by the Governmental Immunity Act of Utah (UGIA), *see generally* Utah Code §§ 63G-7-101 to -904; that Graves did not and could not properly plead that the Commissioners or Taylor acted with actual malice; and that Graves's infliction of emotional distress claims failed as a matter of law.

¶11　The district court orally granted the motion to dismiss. Its subsequent written order explained that, under GRAMA and *Deseret News Publishing Co. v. Salt Lake County*, 2008 UT 26, 182 P.3d 372, the Commissioners and the County were required to disclose the report because it was not a protected record, and that, accordingly, "as a matter of law," Graves could not "prove they acted with actual malice." As to Taylor's conduct—including lodging the UALD complaint and allegedly surreptitiously disclosing to the media her claims of sexual harassment and gender discrimination—the court concluded that Graves's claims were barred by the UGIA because reporting and investigating sexual harassment allegations were mandatory and both actions were governmental functions. Moreover, the district court concluded that Taylor's intentional acts, including her alleged leaking of the sexual harassment allegations to the media, were activities for which immunity was not waived. Accordingly, the court dismissed with prejudice Graves's claims of false light invasion of privacy, defamation, and slander/libel per se. The parties stipulated to the dismissal with prejudice of the emotional distress claims. Graves appeals the district court's decision.

## ISSUE AND STANDARD OF REVIEW

¶12　Graves asserts that the district court erred in dismissing his claims. "A motion to dismiss should be granted only if, assuming the truth of the allegations in the complaint . . . , it is clear that the plaintiff is not entitled to relief." *Hudgens v. Prosper, Inc.*, 2010 UT 68, ¶ 14, 243 P.3d 1275 (quotation simplified). We generally review a district court's decision to dismiss claims under rule 12(b)(6) for correctness. *Blanch v. Farrell*, 2018 UT App 172, ¶ 14, 436 P.3d 285.[2]

---

2. On appeal, Graves articulated the issues in a different fashion. To the extent that we have not addressed those issues, "we have

(continued…)

ANALYSIS

I. Claims Against the Commissioners and Taylor

¶13 The district court relied on *Deseret News Publishing Co. v. Salt Lake County*, 2008 UT 26, 182 P.3d 372, in reaching its conclusion that the Commissioners were required to release the report. Regarding Taylor, the district court turned to Utah Code section 63G-7-201(4) in determining that Taylor was protected by the UGIA. We agree with the district court's decision dismissing Graves's claims against the Commissioners and Taylor, but for a different reason. *See Okelberry v. West Daniels Land Ass'n*, 2005 UT App 327, ¶ 11, 120 P.3d 34 ("It is well established that we may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action, and this is true even though such ground or theory is not urged or argued on appeal by appellee, was not raised in the lower court, and was not considered or passed on by the lower court." (quotation simplified)).

¶14 Governmental immunity shields the State and its employees acting in their official capacities from suit unless the State expressly consents to being sued. The UGIA states that "each governmental entity and each employee of a governmental entity are immune from suit for any injury that results from the exercise of a governmental function." Utah Code § 63G-7-201(1); *see also Wheeler v. McPherson*, 2002 UT 16, ¶ 10, 40 P.3d 632 ("The [UGIA] grants the state and its political subdivisions broad, background immunity from injuries that result due to the exercise of a governmental function." (quotation simplified)). To determine if an employee of a "governmental entity is immune from suit under the [UGIA], we apply a three-part test, which assesses

---

determined that they are foreclosed" by the ensuing analysis. *See State v. Pullman*, 2013 UT App 168, ¶ 46 n.11, 306 P.3d 827.

(1) whether the activity undertaken is a governmental function; (2) whether governmental immunity was waived for the particular activity; and (3) whether there is an exception to that waiver." *Van de Grift v. State*, 2013 UT 11, ¶ 8, 299 P.3d 1043 (quotation simplified).

¶15 First, the actions of the Commissioners and Taylor were exercises of a governmental function. A governmental function is broadly defined as "each activity, undertaking, or operation performed by a department, agency, employee, agent, or officer of a governmental entity." Utah Code § 63G-7-102(5)(b); *see also id*. § 63G-7-101(2) (stating that the "scope of the waivers and retentions of immunity" found in the UGIA "applies to all functions of government, no matter how labeled . . . and governs all claims against governmental . . . employees or agents arising out of the performance of the employee's duties, within the scope of employment, or under color of authority"); *Scott v. Universal Sales, Inc.*, 2015 UT 64, ¶ 58, 356 P.3d 1172 (noting that the legislature has "restricted governmental liability . . . by expanding the [UGIA's] definition of 'governmental function'" and that "the statute currently defines that term as encompassing anything the government decides to do"). Under this standard, all the complained-of actions of the Commissioners and Taylor were governmental functions.

¶16 Indeed, the Commissioners were acting in their official capacities when they communicated publicly about Taylor's complaints against Graves; after all, the Commissioners held a press conference about a governmental complaint and investigation immediately after an official meeting and later posted a prepared statement about the same to their official social media accounts. Thus, these were "activit[ies] . . . performed by . . . [an] officer of a governmental entity." *See* Utah Code § 63G-7-102(5)(b).

¶17    Graves does not resist this conclusion directly; instead, he contends that the first prong of the three-part governmental immunity test is not met because the Commissioners' actions were not "essential to the core of governmental function." But in making this argument, Graves relies on an outdated definition of "governmental function." In *Standiford v. Salt Lake City Corp.*, 605 P.2d 1230 (Utah 1980), the Utah Supreme Court adopted a common law definition for governmental function, concluding that to qualify for immunity, "the activity under consideration [must be] of such a unique nature that it can only be performed by a governmental agency or that it is essential to the core of governmental activity." *Id.* at 1236–37. But that definition was superseded by statute decades ago, *GeoMetWatch Corp. v. Utah State Univ. Rsch. Found.*, 2018 UT 50, ¶ 18 n.3, 428 P.3d 1064 (explaining that the *Standiford* definition was statutorily changed in 1987), and we now apply the legislature's broad statutory definition that "encompass[es] anything the government decides to do," *Scott*, 2015 UT 64, ¶ 58.[3] Graves does not contend that this statutory definition is unmet.

¶18    Similarly, Graves relies on the same outdated *Standiford* definition to argue that Taylor's alleged disclosure of the report to the media was "not a governmental function."[4] Specifically, Graves does not contend that Taylor's alleged leaking of the report to the media was not a governmental function under the

---

3. The *Standiford* definition of governmental function that Graves relies on is relevant only in certain challenges under the open courts clause of the Utah Constitution. *See Scott v. Universal Sales, Inc.*, 2015 UT 64, ¶¶ 59–60, 356 P.3d 1172. As we explain, *see infra* ¶¶ 24–25, Graves has not preserved a constitutional challenge.

4. Graves does not challenge the assertion that Taylor's acts of filing a sexual harassment complaint arising out of her employment or participating in the internal investigation of that complaint are governmental functions.

statutory definition, nor does he suggest that her alleged contact with the press did not arise out of the performance of her duties. To the contrary, Graves alleged in his complaint that "at all times relevant to the allegations in [the] Complaint," Taylor was "an employee of [the] County," acting as "manager of the human resources department" for the County. Thus, Graves is left to contend that because allegedly releasing the report to the media did not "materially advance the *core* functions of the government" (emphasis added), the district court was wrong to conclude that the UGIA applies. But, as shown above, Graves applies the wrong standard. Accordingly, we conclude that the first prong of the three-part test has been met.

¶19    Next, the UGIA is clear that a "governmental entity and an employee of a governmental entity retain immunity from suit unless that immunity has been expressly waived in [the UGIA]." *See* Utah Code § 63G-7-101(3); *see also id.* § 63G-7-201(1) ("Except as otherwise provided in [the UGIA], each governmental entity and each employee of a governmental entity are immune from suit for any injury that results from the exercise of a governmental function."); *Cunningham v. Weber County*, 2022 UT 8, ¶ 28, 506 P.3d 575 ("[A] governmental entity enjoys immunity from suit unless the [UGIA] waives that immunity."). And as applicable here, the UGIA contains no waiver of immunity applicable to Graves's claims for false light invasion of privacy, defamation, and slander/libel per se. Section 63G-7-301 of the UGIA lists the express waivers of immunity, and Graves has not pointed to any that apply. Instead, he argues that he "has pleaded intentional acts and the immunity granted" in subsection 63G-7-201(4) "does not apply." We agree with Graves, but only in part.

¶20    Subsection 63G-7-201(4) states, as relevant here, that a "governmental entity, its officers, and its employees are immune from suit, and immunity is not waived, for any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment, if the injury arises out of or in

connection with, or results from . . . libel, slander, deceit . . . [or] a misrepresentation by an employee whether or not the misrepresentation is negligent or intentional." Utah Code § 63G-7-201(4)(b), (f). This provision operates in conjunction with subsection 63G-7-301(2)(i), which states, "Immunity from suit of each governmental entity is waived . . . subject to Subsections 63G-7-101(4) and 63G-7-201(4), as to any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment." *Id.* § 63G-7-301(2)(i). In other words, subsection 63G-7-301(2)(i) reflects an express waiver of immunity for negligent acts, but that otherwise broad waiver comes with exceptions. And one of those exceptions is found in subsection 63G-7-201(4), which excludes from the waiver injuries caused by a negligent act of a governmental employee if that injury arose out of the enumerated intentional acts. *See id.* § 63G-7-201(4).

¶21  We agree with Graves that the exception to the waiver of immunity referenced in subsection 63G-7-201(4) does not apply. Graves does not allege that he was injured by a negligent act, and thus the *exception* to the waiver for immunity for negligence has no application here. But it does not follow that the State has waived its immunity for the intentional torts Graves asserts. As explained above, the UGIA makes clear that governmental entities and their employees are immune from suit unless immunity is expressly waived. *See supra* ¶ 19. There is no express waiver in the UGIA for the intentional torts Graves claims. The fact that subsection 63G-7-201(4) does not apply here does not mean that the Commissioners and Taylor are not immune from suit. Their immunity derives from subsections 63G-7-101(3) and 63G-7-201(1).[5] *See supra* ¶ 19.

---

5. In our previously issued opinion, we concluded that subsection 63G-7-202(3)(c)(i) of the UGIA waived immunity for the Commissioner's and Taylor's alleged intentional conduct.
(continued…)

¶22 Accordingly, we conclude that Graves's claims against the Commissioners and Taylor were properly dismissed because their actions were exercises of a governmental function that enjoy immunity.

## II. Graves's Constitutional Claims

¶23 Graves's briefing focuses on his claims against the Commissioners and Taylor and does not separately address whether the County is immune from his claims. But he argues generally that none of the Appellees (including the County) are immune from suit for an additional reason to the one discussed above. Graves argues that this court should "consider whether immunity [for intentional acts] existed or was granted in the first place," asserting that "[w]ithout a specific grant of immunity, there is no immunity to consider." He points to the use of the word "retain" in the UGIA: "A governmental entity and an employee of a governmental entity retain immunity from suit unless that immunity has been expressly waived in [the UGIA]."

---

Subsection 63G-7-202(3) provides that "an action under [the UGIA] against a governmental entity for an injury caused by an act or omission that occurs during the performance of an employee's duties, within the scope of employment . . . is a plaintiff's exclusive remedy" and precludes "any civil action or proceeding based upon the same subject matter against the employee . . . whose act or omission gave rise to the claim." Utah Code § 63G-7-202(3)(a), (c). The provision then lists exceptions to this general rule, including cases where "the employee acted or failed to act through fraud or willful misconduct." *Id.* § 63G-7-202(3)(c)(i). The Appellees asked us to reconsider our conclusion, and, after hearing from both sides, we conclude that we misapprehended the nature and function of this subsection of the UGIA. Properly understood, this provision reflects an exception to a statutory exclusive remedy, not a blanket waiver of immunity for governmental employees for any fraud or willful misconduct.

Utah Code § 63G-7-101(3). Graves argues that *in passing the UGIA*, "the legislature attempted to retain something that did not exist in the first place."

¶24 We understand this to be a constitutional challenge, which Graves did not preserve before the district court. "As a general rule, claims not raised before the trial court may not be raised on appeal. A party cannot circumvent that rule by merely mentioning an issue without introducing supporting evidence or relevant legal authority; such a mere mention does not preserve that issue for appeal." *State v. Cruz*, 2005 UT 45, ¶ 33, 122 P.3d 543 (quotation simplified). Rather, "for an issue to be sufficiently raised, even if indirectly, it must at least be raised to a level of consciousness such that the trial judge can consider it." *State v. Brown*, 856 P.2d 358, 361 (Utah Ct. App. 1993) (quotation simplified). Graves did not do that here. He did not argue to the district court that the UGIA somehow abrogated a remedy against the Appellees that was once available. Indeed, his arguments before the district court were limited to whether the Commissioners and Taylor committed personal acts essential to core governmental functions and whether subsection 63G-7-201(4) applied. Although Graves mentioned in passing that an expansive understanding of governmental function that included intentional torts could violate the open courts clause, *see Scott v. Universal Sales, Inc.*, 2015 UT 64, ¶¶ 57–59, 356 P.3d 1172 (noting that an expanded definition of "governmental function" could violate the open courts clause of Article I, Section 11 of the Utah Constitution (quotation simplified)), he did not raise a specific constitutional challenge to the immunity of governmental entities to a degree that the district court had an opportunity to consider it.

¶25 Moreover, Graves did not notify the Utah Attorney General of his constitutional challenge to the UGIA, as he was required to do. *See* Utah Code § 78B-6-403(3) ("If a statute . . . is alleged to be invalid, the attorney general shall be served with a

copy of the proceeding and be entitled to be heard."); *see also* Utah R. Civ. P. 24(d)(1) ("If a party challenges the constitutionality of a statute in an action in which the Attorney General has not appeared, the party raising the question of constitutionality shall notify the Attorney General of such fact by serving the notice on the Attorney General by email or, if circumstances prevent service by email, by mail . . . . The party shall then file proof of service with the court."); Utah R. App. P. 25A(a)(1) ("When a party challenges the constitutionality of a statute in an appeal or petition for review in which the Attorney General has not appeared, every party must serve its principal brief and any subsequent brief on the Attorney General on or before the date the brief is filed."). Accordingly, we decline to further address this issue.

CONCLUSION

¶26 Graves's claims against the Commissioners and Taylor were properly dismissed because they involved the exercise of a governmental function that enjoys immunity. Graves's constitutional challenge to the applicability of the UGIA relative to all the Appellees fails because it was unpreserved and because Graves did not give proper notice to the Attorney General. Affirmed.

———————