503 P.2d 137

Inga-Lill ELTON, Plaintiff and Respondent,

v.

UTAH STATE RETIREMENT BOARD, an agency of the State of Utah, Defendant and Appellant.

No. 12809.

Supreme Court of Utah.

Nov. 15, 1972.

---

6.  State v. Davis, 121 Utah 189, 240 P.2d 265.

K. Roger Bean, Asst. Atty. Gen., Vernon B. Romney, Atty. Gen., Salt Lake City, for defendant and appellant.

Harold G. Christensen, Salt Lake City, for plaintiff and respondent.

HYDE, District Judge:

The plaintiff is the widow of the late Judge Leonard Elton. Judge Elton died May 13, 1970, as a result of a stroke. Plaintiff's application for widow's benefits to the Utah State Retirement Board was denied. Said administrative ruling was appealed to the district court, which court heard the case de novo and ruled in favor of the widow's claim and against the Utah State Retirement Board.

■ Appellant seeks reversal of the decision of the district court on the basis that Judge Elton died as a result of a disease and not as a result of an accident in that the evidence did not show some work-related incident or accident, and further, that Judge Elton's stroke did not arise out of or occur in the course of his employment. The issue presented by this appeal is therefore simply whether the findings of the lower court are supported by competent evidence. It being a well settled rule of judicial review that the trial court's findings will not be disturbed unless they are clearly against the weight of the evidence or it manifestly appears the court misapplied the law to the established facts. Hardy v. Hendrickson, 27 Utah 2d 251, 495 P.2d 28.

The legal structure within which the evidence is to be considered is the former judicial retirement act which provided as follows:

Disability retirement compensation—widow's pension.—Any judge who has had 10 years of service and who is retired on grounds of disability pursuant to Section 49-7-8(d) shall be entitled to the disability retirement compensation provided for in this act. Any judge, regardless of the years of service, whose disability arises out of or in the course of performance of his judicial duties and the widow of every judge who is killed by accident or arising out of or in the course of his employment, wheresoever such injury occurred, shall be entitled to the disability retirement compensation or widows' pension, respectively, provided for in this act. [Section 49-7-4, U.C.A. 1953.]

This court has previously determined that aggravation of a pre-existing disease by an industrial accident is compensable and that an internal failure brought about by exertion in the course of employment

may be an accident within the meaning of the Utah Workmen's Compensation Act. Powers v. Industrial Commission, 19 Utah 2d 140, 427 P.2d 740 (1967). The Utah Workmen's Compensation Act employs language identical to that found in the Judges Retirement Act above quoted.

The evidence at the trial shows that Judge Leonard Elton was appointed to the bench of the Third Judicial District in 1966. At the time he was in good health; there were no indications of physical impairment. He was not then and had not for many years been under medical care. On January 9, 1969 Judge Elton suffered a stroke. He was hospitalized for a time and then returned to part-time employment. By the fall of 1969 he had resumed his judicial duties and was working full time. On January 1, 1970 he assumed the responsibilities of presiding judge for the Third Judicial District. These responsibilities substantially increased his work load. As presiding judge he assigned to himself several sensitive and difficult cases. From the time he resumed his full judicial duties until April 20, 1970 Judge Elton saw his doctor monthly without complaint or medical findings. On April 21, 1970 Judge Elton consulted his doctor, complaining of dizziness. He was clammy, unsteady in gait, and had experienced nausea and vomiting. His doctor believed he had suffered a stroke. He stayed home ill the 21st and 22nd of April. He returned to work on the 23rd to hear motions on a case which had aroused extreme public interest. He also worked April 24th, a holiday, hearing extensive arguments in the same case. On Monday, April 27th, Judge Elton was again home ill. He saw his doctor on the 28th, who insisted he stay home for a week. On Wednesday, May 6th, he had returned to work carrying a full case load. On May 12th he made his ruling on the case which had aroused such public interest, started a nonjury case, and heard an annulment and a divorce. He had a jury case scheduled for May 13th but died that morning.

The persons who knew him best—his wife, his colleagues, his clerk, his bailiff, and the lawyers who practiced before him —all testified to the deterioration of his health, brought upon by the stresses of the highly sensitive cases handled by him during the last six weeks of his life. His physician testified that Judge Elton suffered from vascular disease, resulting in insufficient blood supply to the brain, and that this condition was aggravated by the stresses of Judge Elton's employment, and that these stresses were the principal factor in cutting short his life.

■ The record supports the trial court's conclusion that Judge Elton died as a result of an accident arising out of or in the course of his employment, and under the traditional rules of review the

judgment of that court will not be disturbed. The judgment of the trial court is affirmed, no costs awarded.

CALLISTER, C. J., and HENRIOD, TUCKETT and ELLETT, JJ., concur.

CROCKETT, J., having disqualified himself, does not participate herein.