UTE–CAL LAND DEVELOPMENT, a
Utah corporation, Plaintiff
and Appellant,

v.

INTERMOUNTAIN STOCK
EXCHANGE, Defendant
and Respondent.

INTERMOUNTAIN STOCK EX-
CHANGE, Third-Party Plain-
tiff and Respondent,

v.

Peter BUFFO, Third-Party Defendant
and Appellant.

No. 17063.

Supreme Court of Utah.

April 10, 1981.

Robert M. McRae, Loni F. Deland, Salt Lake City, for plaintiff and appellant.

Gordon Strachan, Salt Lake City, for defendant and respondent.

HALL, Justice:

Peter Buffo and Ute-Cal Land Development (a corporation of which Buffo was president, hereinafter referred to collectively as "Buffo"[1]) appeal a judgment of unlawful detainer.

As found by the trial court, the facts are essentially as follows.[2] On August 1, 1976, Intermountain Stock Exchange (hereinafter "ISE") leased a portion of a building it owned to a corporation known as "Investestate." Investestate operated a business known as the "Exchange Club" on the premises. The lease was to expire on July 31, 1978, but could be renewed (for a total of ten additional years) upon written notice given at least six months prior to expiration. The lease also provided that it was assignable, but only with the express written consent of ISE.

On October 13, 1977, ISE terminated the lease agreement due to Investestate's failure to pay rent; nevertheless, Investestate was allowed to occupy the premises as a month-to-month tenant until it abandoned the premises on May 8, 1978.[3]

In early June, 1978, Buffo took possession of the premises abandoned by Investestate without the consent or knowledge of ISE. Thereafter, Buffo contacted Reo Cutler, president of ISE, to inform him that Buffo had taken over the Exchange Club from Investestate and that he wanted to negotiate a lease agreement with ISE for the premises. Correspondence and proposed leases were exchanged but never agreed upon.

No rent was paid on the premises in June or July, 1978. A check for two months' rent was sent on August 3, 1978, but was subsequently dishonored by the bank for insufficient funds. ISE then decided to discontinue further negotiations on a written lease agreement but did allow Buffo to retain possession as a month-to-month tenant. During the next several months, Buffo repeatedly defaulted on the rental payments and was served with a "Notice to Quit or Pay Rent" on three different occasions.

In August, 1979, ISE sold the building to "Exchange Associates." After Buffo had refused to accept the terms of a lease proposed by Exchange Associates, on December 12, 1979, Buffo was served with a "Notice to Quit."

On December 31, 1979, Buffo filed a declaratory judgment action whereby he sought to establish the existence of an agreement with ISE that he had "the right of first refusal to purchase said building or in the alternative for a peaceful right to occupy the leased premises for at least twelve years." On January 17, 1980, ISE and Exchange Associates filed an answer and counterclaim wherein it asserted, *inter alia*, a claim of unlawful detainer. The lower court granted accelerated consideration of the unlawful detainer action. Following a nonjury trial, the court made the following minute entry:

On the issue of unlawful detainer, the Court finds from a preponderance or greater weight of the evidence as follows:

1. The Investestate lease was terminated and not effectively assigned to or assumed by the plaintiff.

2. No written lease existed between the parties and the facts do not support any recognized exception to requirement of a written lease.

3. That plaintiff occupied the premises under a month to month tenancy.

4. The notice requirements of the unlawful detainer statute have been satisfied.

5. The defendant is entitled to possession of the premises and to damages for hold over tenancy as prayed.

*Elton v. Utah State Retirement Board*, 28 Utah 2d 368, 503 P.2d 137 (1972).

1. The trial court found them to be jointly and severally liable, hence the collective reference.

2. The trial court's findings will not be disturbed unless they are clearly against the weight of the evidence or it manifestly appears that the court has misapplied the law to the established facts.

3. At the time of its abandonment, Investestate owed over $2,000 in past rent, which was ultimately reduced to judgment in November, 1978.

The court directed counsel for ISE to prepare formal findings, conclusions and judgment consistent with the foregoing. These formal documents were signed and filed on April 3, 1980. On April 14, 1980, Buffo filed with the court an "Objection to Judgment" and a "Verified Motion." The Objection to Judgment alleged as follows:

1. Defendants and third party plaintiffs have purported to enter a Judgment in this matter in the sum of $13,688 with interest thereon at the rate of 8 percent.

2. Said Judgment has not been served upon opposing counsel which omission is a violation of Rule 2.9, Rules of Practice in the District Court.

3. Said Judgment is inconsistent with decision of the Court in that:

(a) There was no evidence presented at trial sufficient to justify the award of $2,456 for rent due for April, October and December, 1979;

(b) There was no award of interest;

(c) The Judgment ostensibly included rent (trebled) for April, 1980 when the only reason for the holdover past March was the Writ of Attachment, served March 28, 1980, which prevented plaintiff and third party defendant from moving out.

The Verified Motion moved the court:

1. To fix an amount of an appeal bond in accordance with whatever amount the Court deems is a just and proper amount of judgment.

2. To order a delivery of the permises [sic] back to plaintiff and third party defendant during the pendency of this appeal from and after the posting of bond herein.

3. For an order finding opposing counsel in contempt for their willful failure to comply with the Rules of Practice which failure has caused considerable expense and inconvenience to plaintiff and plaintiff's counsel.

The motion and objection to judgment came before the court for hearing on April 23, 1980. Following argument by counsel, the court "orders said motion to be and the same is hereby denied," thereby apparently affirming the previously entered formal judgment. Buffo thereafter filed his notice of appeal on May 5, 1980.

 The first question we are called upon to address is the timeliness of this appeal.[4] Rule 73(a), U.R.C.P., provides that an appeal is to be taken within one month of the entry of judgment, "unless a shorter time is provided by law." U.C.A., 1953, 78–36–11 specifically provides that in unlawful detainer actions, either party may, *within ten days*, appeal from the judgment rendered. This Court has consistently held that a party has ten days, and not one month, in which to appeal from a judgment for unlawful detainer.[5]

The notice of appeal was filed on May 5, 1980, which is clearly more than ten days after the entry of the original judgment on April 3, 1980. However, on April 14,[6] Buffo filed his objection to judgment and claimed that the formal findings, conclusions and judgment were inconsistent with the court's decision. On April 23, 1980, the court ruled on the motion and the appeal period again commenced to run.[7]

The tenth day after April 23 fell on Saturday, May 3. In earlier days, county offices were open on Saturdays and the only

---

4. Following the filing of Buffo's notice of appeal, ISE filed a motion to dismiss the appeal pursuant to Rule 73B, U.R.C.P. We deferred ruling on the motion until now.

5. *Coombs v. Johnson*, 26 Utah 2d 8, 484 P.2d 155 (1971); *Madsen v. Chournos*, 102 Utah 247, 129 P.2d 986 (1942); *Brandley v. Lewis*, 97 Utah 217, 92 P.2d 338 (1939); *Hunsaker v. Harris*, 37 Utah 226, 109 P. 1 (1910).

6. The ten-day period would normally have run on April 13, but because that date fell on a Sunday, the filing on Monday, April 14 was timely. See *infra*.

7. We view the motion in the instant case to be one which would allow correction of alleged inconsistencies between the court's ruling from the bench and the formal judgment. See Rule 59(e), U.R.C.P. It is to be distinguished from the "Motion to Reconsider" filed in the case of *Peay v. Peay*, Utah, 607 P.2d 841 (1980), which essentially asked the court to rethink its decision.

days excluded when computing time limits were holidays.[8] In 1957, the Legislature authorized county commissioners to opt to close county offices on Saturdays.[9] Said statute provided further that:

> Any act authorized, required or permitted to be performed at or by, or with respect to, any such county municipal office on a Saturday when the county municipal office is closed, may be so performed on the next succeeding business day and no liability or loss of rights of any kind shall result from such delay.

In *Transwestern General Agency v. Morgan*,[10] this Court held that where the deadline for filing an appeal expired on a Saturday, the notice of appeal which was filed the following Monday was timely filed because of the foregoing provision. This is also consistent with our Rule of Civil Procedure which provides as follows:

> In computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday....[11]

The filing of Buffo's notice of appeal on Monday, May 5, 1980, is therefore deemed to have been timely.

Buffo's specific contentions on appeal are that 1) Buffo was not a month-to-month tenant; 2) the notice to quit was invalid; and 3) the damages were improperly determined.

The first contention is clearly a challenge to factual findings which are supported by substantial evidence.[12] The lease with Investestate was terminated six months before the purported assignment to Buffo. Even assuming, *arguendo,* that the Investestate lease was not terminated, ISE had to expressly consent in writing to any assignment thereof. There is nothing in the record which even claims that consent was given. No lease was ever signed by the parties and, based upon the evidence adduced at trial, the court concluded that there was no oral contract between the parties. Since no contract was agreed upon, we need not address the question of whether the contract had to be in writing as required by the statute of frauds.[13]

Buffo's second contention challenges both the form of the notice to quit and its service.

The challenge as to form is that the notice did not give Buffo the alternative of performing, rather than to vacate. Although Buffo contends otherwise, the trial court held him to be a month-to-month tenant. As such, the applicable statute[14] provides, in pertinent part, as follows:

> A tenant of real property, for a term less than life, is guilty of an unlawful detainer:
>
> \* \* \* \* \* \*
>
> (2) When, having leased real property for an indefinite time with monthly or other periodic rent reserved, he continues in possession thereof in person or by subtenant after the end of any such month or period, in cases where the landlord or the successor in estate of his landlord if any there is, fifteen days or more prior to the end of such month or period, shall have served *notice requiring him to quit*

---

8. U.C.A., 1953, 68–3–7. Note that Sundays are considered to be holidays pursuant to U.C.A., 1953, 63–13–2.

9. U.C.A., 1953, 17–16–9.

10. Utah, 526 P.2d 1186 (1974).

11. Rule 6(a), U.R.C.P.

12. See *supra,* footnote 2.

13. U.C.A., 1953, 25–5–3.

14. U.C.A., 1953, 78–36–3.

*the premises at the expiration of such month or period*; . . . . [Emphasis added.]

A notice to a month-to-month tenant to quit the premises therefore need not contain the alternative of paying rent.

Buffo contends that the actual service of the notice, as well as the form, was defective. U.C.A., 1953, 78–36–6 provides as follows:

The notices required by the preceding sections may be served, either:

(1) By delivering a copy to the tenant personally; or,

(2) If he is absent from his place of residence, or from his usual place of business, by leaving a copy with some person of suitable age and discretion at either place and sending a copy thereof through the mail addressed to the tenant at his place of residence or place of business; or,

(3) If such place of residence or business cannot be ascertained or a person of suitable age or discretion cannot be found there, then by affixing a copy in a conspicuous place on the leased property and also delivering a copy to a person there residing, if such person can be found, and also sending a copy through the mail addressed to the tenant at the place where the leased property is situated. Service upon a subtenant may be made in the same manner.

Contrary to the assertions of Buffo, the general provisions of Rule 4, U.R.C.P., relating to service do not modify the above-quoted statute which specifically applies to service in unlawful detainer actions.[15]

In Buffo's answer to ISE's counterclaim, he admits service, and although he sought to avoid that admission at trial, the court specifically found that a notice to quit was served upon Ute-Cal and Buffo on December 12, 1979. Irrespective of the admission, the evidence supports the finding of service. The notice was personally served on one Kay Halliday, who testified on direct examination that when Buffo is out of town she answers his telephone both in the Exchange Club and in his office. A copy of the notice was posted on the door of the premises. A copy was mailed to Buffo, as well as to his legal counsel. On the facts presented, we are convinced that the service was made in accordance with the provisions of the statute.

Buffo's final contention of error challenges the court's determination of damages. U.C.A., 1953, 78–36–10 provides that "judgment shall be rendered against the defendant guilty of . . . unlawful detainer, for the rent and for three times the amount of damages thus assessed."

In interpreting the predecessor of our present statute, in the case of *Forrester v. Cook* [16] the Court held that in an unlawful detainer action "the statute makes it mandatory upon the court to render judgment for three times the amount of damages thus assessed." Buffo refers to an unpublished opinion [17] wherein we affirmed a trial court's decision which awarded back rent to the lessor in an unlawful detainer action. The issue of treble damages was not presented as an issue and our affirmance of the trial court in that case should not be read as contrary to the holding in *Forrester*. The unpublished opinion specifically states that it "does not add significantly to existing law." In the instant case, ISE specifically sought treble damages under the statute. Having found the facts as it did, the trial court was justified in awarding treble damages.

Buffo also contends that by reason of a writ of attachment served on him on March 31, 1980, he was prohibited from vacating the premises and hence should not be held liable for damages after that date. This contention must also fail. In light of Buffo's refusal to vacate from when the notice to quit was first served up until the time the writ of attachment was served, Buffo cannot now successfully claim that he

---

**15.** That the specific provision controls over the general provision, see, e. g., *Millett v. Clark Clinic Corp.*, Utah, 609 P.2d 934 (1980).

**16.** 77 Utah 137, 292 P. 206 (1930).

**17.** *Price Construction Co., Inc. v. Foutz*, No. 16688, filed May 30, 1980.

was prohibited from vacating. The primary intent of the writ of attachment was not to restrain Buffo, but to protect ISE.

The findings and judgment of the lower court are hereby affirmed. Costs to ISE.

MAUGHAN, C. J., and STEWART, HOWE and OAKS, JJ., concur.