**2019 UT App 127**

## THE UTAH COURT OF APPEALS

YVONNE MARTIN,
Appellant,
*v.*
PETTER KRISTENSEN AND FRANK O. KRISTENSEN,
Appellees.

Opinion
No. 20160265-CA
Filed July 26, 2019

Third District Court, Salt Lake Department
The Honorable Todd M. Shaughnessy
No. 084902378

Karthik Nadesan, Attorney for Appellant

R. Stephen Marshall, Cameron J. Cutler, and Kevin
M. Paulsen, Attorneys for Appellees

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and DIANA HAGEN concurred.

POHLMAN, Judge:

¶1 After lengthy court battles on multiple fronts, Yvonne Martin was awarded $140,285.54 in support payments from her ex-husband, Petter Kristensen, but was ordered to pay Petter's[1] father, Frank Kristensen, $900,663.26 for unlawful detainer. Yvonne appeals from a number of the trial court's decisions. We affirm.

---

1. Because two of the parties share a surname, we refer to each party by his or her first name, as is our practice in such situations. No disrespect is intended by the apparent informality.

BACKGROUND

¶2     This appeal stems from a consolidation of four cases: a divorce case between Yvonne and Petter; an unlawful detainer case by Frank against Yvonne; a quiet title case by Yvonne against Frank and Petter; and a fraudulent transfer case by Yvonne against Frank and Petter. The facts and procedural history relevant to each are given below.

*The Marital Property and Divorce Petition*

¶3     Yvonne and Petter were married in 1995. Both before and during the marriage, they signed marital agreements (the Marital Agreements) identifying their separate property and detailing how assets would be divided in the event of a divorce. As relevant here, the Marital Agreements provide that Yvonne and Petter did "not intend to share together in the ownership of any property."

¶4     Yvonne and Petter lived in a house purchased by Yvonne in 1999 (the Property). Frank contributed $58,000 to the purchase price and, in exchange, received an "undivided one-half interest" in the Property from Yvonne. In 2003, Yvonne refinanced the Property, without informing Frank, for approximately $80,000. When Petter learned of the refinance, he was concerned because it increased the mortgage on the Property and eliminated the equity in the home to which he believed Frank was entitled. So in early 2004, Petter proposed a solution: Frank would pay off the now-$260,000 mortgage in exchange for full ownership of the Property, and Yvonne would keep the $80,000 she received from the refinance. Yvonne accepted the proposal and executed a quitclaim deed in favor of Frank, though Yvonne and Petter continued to live in the Property. In 2008, approximately four years later, Yvonne petitioned for divorce.

*The Unlawful Detainer and Quiet Title Proceedings*

¶5    Around one month after filing for divorce, Yvonne was served with a notice to vacate the Property. After Yvonne failed to do so, Frank sued for unlawful detainer. The complaint requested treble damages "from and including the 7th day of July, 2008, until possession of the rented premises is restored to [Frank]." In response, Yvonne filed a quiet title action against Frank and Petter, contending that "she was improperly coerced into executing [the] quitclaim deed to Frank" and that the deed was therefore void. The unlawful detainer and quiet title actions were then consolidated.[2]

*The Temporary Orders*

¶6    In April and July 2009, Judge Faust, the trial judge presiding over the divorce proceedings, entered orders stating that Yvonne was "to have temporary use and possession" of the Property. Yvonne had earlier attempted to add Frank as a party in the divorce case, and Frank himself entered a limited appearance in the case to protect his interests in the Property. The domestic relations commissioner assigned to the case, however, recommended that Frank be dismissed as a party. When the court entered its orders granting temporary possession of the Property to Yvonne, Frank was not listed in the caption or served with the orders.

*The Unlawful Detainer Trial*

¶7    In May 2012, Yvonne was still living in the Property, and the unlawful detainer and quiet title actions proceeded to

---

2. Unless otherwise specified, these combined actions are referred to in this opinion as "unlawful detainer."

trial before Judge Shaughnessy.[3] The quiet title portion was tried to a jury, while the unlawful detainer portion was tried to the bench.

¶8 At trial, Yvonne objected to or sought to admit, as relevant here, three types of evidence or argument. First, Yvonne objected to argument and testimony that allegedly conflicted with the terms of the Marital Agreements. For example, in his opening statement, Frank stated that Yvonne was trying to get "something for nothing." Yvonne moved for a mistrial, asserting that the "opening statements that were given directly contradict what the pre-marital agreement says." The court denied the motion because "statements made by counsel in openings are not evidence." Later, during cross-examination of Yvonne, Yvonne's counsel objected to a line of questioning regarding whether Petter ever paid money into Yvonne's account so that she could make mortgage payments. Yvonne testified that under the Marital Agreements, "everything [that] comes out of [her] account[] is [her] money and whatever he puts in there is [her] money." Her counsel objected, arguing that the "whole line of questioning [was] irrelevant" because "the agreement says that what goes into her account is hers." The court overruled the objection.

¶9 Second, Yvonne objected to alleged hearsay statements concerning conversations between Petter and Frank. Among other statements, Petter testified that he "asked [his] dad for help" in paying off the mortgage on the Property. Yvonne moved to strike this testimony as hearsay, but the court overruled, saying that "the declarant is in Court now talking about a statement that he made."

---

3. The cases were originally set for trial in December 2010. But after three requests for a continuance, each made by Yvonne, trial was not held until May 2012.

¶10   Finally, Yvonne sought to introduce evidence concerning a second deed between Frank and Petter executed a few weeks after Yvonne quitclaimed the Property to Frank. Frank objected, arguing that the deed was an estate-planning mechanism and not a transfer of the Property. The court was concerned about "the risk of confusion to the jury" on "a collateral issue" and sustained the objection.

¶11   Yvonne also objected to a jury instruction requested by Frank and Petter on ratification. That instruction provided,

> The power of a party to avoid a quit claim deed for duress is lost if, after the circumstances that made the contract voidable have ceased to exist, she manifests to the other party her intention to affirm it or acts with respect to anything that she has received in a manner inconsistent with disaffirmance.

> In ratification cases where undue influence tainted the execution of a . . . contract, it is presumed that the undue influence also tainted the ratification if the causative elements giving rise to the initial undue influence are such that the undue influence was likely to have continued. If the undue influence has once been exerted it will be presumed to follow and taint every transaction between the parties thereafter.

Yvonne objected to the instruction because it did not specify "who bears the burden of proof," ratification was not "pleaded as an affirmative defense," and there was "no Utah case law authority for" the instruction. The trial court overruled the objection and agreed to give the instruction.

¶12    After deliberations, the jury returned a verdict for Frank, finding that Yvonne did not "execute the quitclaim deed in favor of Frank Kristensen while under duress."

¶13    Trial then turned to the unlawful detainer portion of the case. To prove his damages, Frank called an expert witness (First Expert) to testify on the rental value of the Property. Yvonne objected because First Expert was "not timely disclosed" and did not provide a "report or anything to accompany or suggest the foundation for his expertise." The trial court, however, allowed First Expert to testify. First Expert testified that he compared "rental information" in the area on similar houses to estimate "a fair rental value" of the Property. Based on his comparison, he evaluated the Property's rental value as $2,200 to $2,400 a month. On cross-examination, Yvonne elicited that First Expert's evaluation was based only on 2012 rental figures; he did not "do an analysis of rental value as of" 2008 through 2011. Yvonne did not call her own expert witness.

¶14    At the close of trial, and based on the jury's finding that Yvonne had not executed the quitclaim deed under duress, the court concluded that Frank was the owner of the Property and that Yvonne had been in unlawful detainer since July 2008. The court accepted the "low end of what [First Expert] . . . offered, in terms of the fair market value" and found it to be $2,200 a month, or $72.32 a day. The court then found that Yvonne had been in unlawful detainer for 1,425 days and, after trebling the damages under the unlawful detainer statute, computed damages of $309,168. The court also ordered costs and attorney fees, as allowed under the statute.

*The Preliminary Injunction*

¶15    After losing at trial, Yvonne sought, and received, a preliminary injunction in the divorce proceedings—now presided over by Judge Kennedy—enjoining Petter, as power of

attorney for Frank, from "interfering with [Yvonne's] right to remain in the [Property]."

*The Fraudulent Transfer Proceedings*

¶16 While Yvonne continued to live in the Property, she initiated a new lawsuit against Petter and Frank for, among other things, fraudulent transfer. In her complaint, she alleged that Petter owed her money from support orders entered in the divorce proceedings and that, in order to avoid his obligations, Petter "transferred funds and assets belonging to him to other individuals, without receiving any equivalent value in exchange for the transfers." She then detailed several alleged transfers.

¶17 The case proceeded, and Frank and Petter moved for summary judgment. They argued that in each of the three transfers from Petter to Frank identified by Yvonne, "Frank provided a reasonably equivalent value in exchange."

¶18 In opposition to their motion, Yvonne argued that there was a factual dispute over "whether Petter received value for the transfers." She asserted that Frank and Petter had not provided sufficient proof to that effect and that a trial was "necessary to enable the Court to conduct proper credibility determinations."

¶19 The court concluded, however, that Yvonne bore the burden of proof on her claim and that Frank and Petter only had to "come forward with some evidence" to support their motion. The court then went through each fact in the motion and found that "what remain[ed]" after Yvonne's objections were "nearly forty paragraphs of largely undisputed facts." The court agreed with Frank and Petter that there were only three "potentially fraudulent conveyances" concerning Frank and Petter, and it stated that the "undisputed facts show[ed] that there was reasonably equivalent value exchanged." It therefore granted the motion for summary judgment, concluding that Yvonne "failed

to provide evidence to support or sustain her fraudulent conveyance claim[].”

*The Consolidated Cases*

¶20  In March 2013—before Judge Shaughnessy had ruled on the summary judgment motion on fraudulent transfer—the divorce, unlawful detainer, and fraudulent transfer cases were consolidated. Judge Kennedy now presided over the actions, and Yvonne filed a motion for a new trial in the unlawful detainer portion of the consolidated cases. Yvonne argued that at trial the court “ruled erroneously on evidentiary matters” and “improperly instructed the jury on ratification.” She also argued that the court “incorrectly concluded that Yvonne unlawfully detained [the Property], as she was in lawful possession pursuant to court order.” Finally, she asserted that the court “improperly allowed expert evidence of rental value, as Frank’s expert was not timely disclosed and did not provide an expert report.” The trial court granted the motion in full.

¶21  The consolidated cases, however, were subsequently reassigned to Judge Shaughnessy, who had previously presided over the unlawful detainer trial.[4] Frank and Petter then filed a motion to vacate the order granting Yvonne a new trial, and the court partially granted the motion to vacate. The court upheld its earlier decisions regarding the evidentiary matters and ratification instruction—vacating Judge Kennedy’s order granting Yvonne’s motion for a new trial based on errors related to those matters—but it granted a new trial on the issue of damages. In doing so, the court stated that it wanted “to make sure that . . . there is not an issue on appeal when this case goes

---

4. Judge Shaughnessy also ruled on Frank and Petter’s motion for summary judgment in the fraudulent transfer case after it had been consolidated. *See supra* ¶ 19.

up with respect to the disclosure of any expert testimony." It then ordered Frank and Yvonne, if she so chose to have an expert, to "serve a disclosure (1) identifying [the] expert, (2) providing a copy of the expert's CV, (3) [providing] a brief summary of [the expert's] anticipated testimony and (4) [providing] the basis for that testimony." Yvonne was also given the opportunity to "informally interview" Frank's expert or "depose the expert."

¶22 At the new trial on damages, Frank called a new expert (Second Expert) to testify regarding the Property's fair rental value. Second Expert testified concerning the relevant rental values of the Property from 2008 through 2015, which ranged from $2,100 to $3,200 per month.[5] Those rental figures for the relevant time period amounted to $224,534.10. Because Yvonne did not provide "an alternative basis for determining" the rental value, the court found that Second Expert's figures were "the most reasonable determinations of fair market rental value." After trebling the amount of damages to $673,602.30, and adding costs of $5,810.21 and attorney fees of $221,250.75, the court ordered Yvonne to pay Frank a total of $900,663.26.

*Attorney Fees*

¶23 In March 2016, after nearly eight years of litigation in the above matters, the trial court entered a decree of divorce and determined that Yvonne was entitled to $140,285.54 in support payments under the Marital Agreements.

¶24 Based on that award, Yvonne sought her attorney fees in defending her rights under the Marital Agreements, which contain an attorney fees provision. The court denied Yvonne her attorney fees on three grounds. First, the court concluded that

_____

5. Yvonne ultimately remained in possession of the Property until October 2015.

"the terms of the attorneys' fee provision in the [Marital Agreements] do not obviously apply to the dispute in this case." It reasoned that "both parties relied on the terms of the [Marital Agreements] to advance their respective positions," not to "invalidate [a] portion or all of" the agreements. (Cleaned up.) Second, the court concluded that even if the provision applied, Yvonne did not prevail in defending her rights. Although she was awarded $1,000 a month under the Marital Agreements, the court noted that Yvonne sought "substantially" more than that and therefore "lost on [her] claim." Finally, the court stated that "the issues in the divorce portion of this case were simple and straightforward" and that "Yvonne represented herself at [the divorce] trial." And though Yvonne was represented by counsel "over collateral issues," the court stated that "Yvonne and her attorneys made no serious effort to bring to conclusion the few, simple issues that needed to be decided." So, the court reasoned, "even if Yvonne was entitled to any attorneys' fees, it would only be for the trial and time spent by attorneys preparing for the issues tried." The court could not "identify any meaningful time spent by counsel on the issues that ultimately were tried" and therefore concluded that "an award of fees would be inappropriate."

¶25   Yvonne appeals.


ISSUES AND STANDARDS OF REVIEW

¶26   Yvonne raises six issues on appeal. First, she contends that she cannot be liable for unlawful detainer when temporary orders entered in the divorce proceedings expressly authorized her to remain in possession of the Property during the pendency of those proceedings. This contention presents mixed questions of law and fact. *Bonnie & Hyde, Inc. v. Lynch*, 2013 UT App 153, ¶ 14, 305 P.3d 196. "Matters of statutory construction are questions of law that are reviewed for correctness," while "questions of fact are reviewed under the clearly erroneous

standard, with deference given to the trial court." *Id.* (cleaned up). "The trial court's application of law to the facts is reviewed for abuse of discretion." *Id.* (cleaned up).

¶27　Second, Yvonne contends that the trial court erred in granting a new trial on damages in the unlawful detainer action. "It is well settled that, as a general matter, the trial court has broad discretion to grant or deny a motion for a new trial," including granting a new trial on the issue of damages. *Smith v. Fairfax Realty, Inc.*, 2003 UT 41, ¶ 25, 82 P.3d 1064 (cleaned up). We will reverse the trial court's decision "only if there is no reasonable basis for the decision." *Id.* (cleaned up).

¶28　Third, Yvonne contends that the trial court erred in instructing the jury on ratification in the unlawful detainer and quiet title proceedings. "Claims of erroneous jury instructions present questions of law that we review for correctness." *Miller v. Utah Dep't of Transp.*, 2012 UT 54, ¶ 42, 285 P.3d 1208 (cleaned up). But an error in the jury instructions will result in reversal only if "the error is harmful and prejudicial." *Gorostieta v. Parkinson*, 2000 UT 99, ¶ 15, 17 P.3d 1110.

¶29　Fourth, Yvonne contends that the trial court committed cumulative error in the unlawful detainer proceedings by allowing and excluding certain evidence. "We review the trial court's resolution of the legal questions underlying the admissibility of evidence for correctness and the trial court's decision to admit or exclude evidence for an abuse of discretion." *Beckman v. Cybertary Franchising LLC*, 2018 UT App 47, ¶ 22, 424 P.3d 1016. To apply the cumulative error doctrine, we "must determine that (1) an error occurred, (2) the error, standing alone, has a conceivable potential for harm, and (3) the cumulative effect of all the potentially harmful errors undermines [our] confidence in the outcome." *State v. Martinez-Castellanos*, 2018 UT 46, ¶ 42, 428 P.3d 1038.

¶30 Fifth, Yvonne contends that the trial court incorrectly granted summary judgment to Frank and Petter on Yvonne's fraudulent transfer claim. We review the trial court's "ultimate grant or denial of summary judgment for correctness" and view "the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (cleaned up).

¶31 Finally, Yvonne contends that she was entitled to attorney fees in the divorce proceedings under the Marital Agreements. "Whether attorney fees are recoverable in an action is a question of law, which we review for correctness." *Express Recovery Services Inc. v. Olson*, 2017 UT App 71, ¶ 5, 397 P.3d 792 (cleaned up). "We review the trial court's determination as to who was the prevailing party under an abuse of discretion standard." *Id.* (cleaned up).

ANALYSIS

I. Unlawful Detainer

¶32 We first consider whether Yvonne is guilty of unlawful detainer when, approximately ten months after the unlawful detainer action was filed, the court in the divorce proceedings ordered that she could possess the Property while the divorce was pending. We therefore examine how the unlawful detainer statute operates and then address Yvonne's arguments in light of the statute.

¶33 Under Utah's unlawful detainer statute, a tenant at will[6] is "guilty of an unlawful detainer if the tenant . . . remains in

---

6. A tenancy at will is a "tenancy in which the tenant holds possession with the landlord's consent but without fixed terms (as for duration or rent)." *Tenancy at will*, Black's Law Dictionary

(continued…)

possession of the premises after the expiration of a notice [to quit the premises] of not less than five calendar days." Utah Code Ann. § 78B-6-802(1)(b)(ii) (LexisNexis 2008).[7] Once a defendant is found to be in unlawful detainer, the "jury or the court . . . shall also assess the damages resulting to the plaintiff from" the unlawful detainer. *Id.* § 78B-6-811(2)(b). Subsection (3) of section 78B-6-811 requires that such damages be trebled. *Id.* § 78B-6-811(3) ("The judgment shall be entered against the defendant for the rent, for three times the amount of the damages assessed under Subsections (2)(a) through (2)(e), and for reasonable attorney fees."); *see also Aris Vision Inst., Inc. v. Wasatch Prop. Mgmt., Inc.*, 2006 UT 45, ¶ 23, 143 P.3d 278 ("[W]e hold that all damages directly and proximately resulting from [unlawful detainer] are subject to the requirement that they be trebled."). Damages for unlawful detainer include lost rental value. *Forrester v. Cook*, 292 P. 206, 214 (Utah 1930), *overruled on other grounds as recognized by P.H. Inv. v. Oliver*, 818 P.2d 1018, 1020 (Utah 1991).

¶34  As our supreme court has explained, the unlawful detainer statute operates as "a mechanism for quickly and clearly resolving conflicts over lawful possession of property between landowners and tenants." *Osguthorpe v. Wolf Mountain Resorts, LC*, 2010 UT 29, ¶ 22, 232 P.3d 999; *see also Bichler v. DEI Sys., Inc.*, 2009 UT 63, ¶ 29, 220 P.3d 1203 (stating that "one of the primary purposes of the unlawful detainer statute is to provide a

---

(…continued)
(10th ed. 2014). "Such a tenancy may be terminated by either party upon fair notice." *Id.*

7. We apply the version of the code that was in effect at the time the unlawful detainer complaint was filed. The code has since been amended, though the provisions we cite are substantially the same.

speedy resolution on the issue of possession"). It does this in part through the "severe remedy" of treble damages, *see Osguthorpe*, 2010 UT 29, ¶ 23 (cleaned up); *see also* Utah Code Ann. § 78B-6-811(3), but also through expedited proceedings, *see id.* § 78B-6-810. These provisions are "evidence of a strong desire by the legislature to create a mechanism pursuant to which owners can be restored to possession of their property." *Osguthorpe*, 2010 UT 29, ¶ 23.

¶35 Here, the court found that Frank has been the titled owner of the Property since June 23, 2004. He served Yvonne with a notice to quit the premises on July 1, 2008, giving her five days to vacate. But Yvonne, claiming that she was the owner of the Property, remained in possession until October 2015. That is, she "remain[ed] in possession of the premises after the expiration of a notice [to quit] of not less than five calendar days." *See* Utah Code Ann. § 78B-6-802(1)(b)(ii). And because Frank, not Yvonne, was the true owner, Yvonne was "guilty of an unlawful detainer" beginning on July 6, 2008, under the plain terms of the statute. *See id.* Therefore, Yvonne is liable for damages during the time of her unlawful detainer, including treble damages for Frank's lost rental value. *See id.* § 78B-6-811(3).

¶36 To resist this conclusion, Yvonne asserts that, "[a]s a matter of law, an occupant of real property cannot be considered to be in unlawful detention of property when she is there pursuant to court order." And because the court in the divorce proceedings "had entered an order authorizing her to remain in possession of [the Property] during the pendency of [those proceedings]," she contends that she was not detaining property unlawfully. We disagree for three reasons.

¶37 First, we are not persuaded that the divorce court's orders granting Yvonne temporary possession of the Property transformed her possession from unlawful to lawful. Yvonne did

not obtain an order granting her temporary possession until the end of April 2009. Frank sued for unlawful detainer, however, in August 2008 and requested treble damages "from and including the 7th day of July, 2008 until possession of the rented premises is restored." Thus, the orders on which Yvonne's arguments depend did not even exist until *after* she had unlawfully remained on the Property for nearly ten months. But Yvonne does not account for that time or explain how the temporary orders she acquired from the divorce court, which did not purport to adjudicate or alter her unlawful detainer status, both retroactively and prospectively excused her unlawful possession.[8]

¶38   Second, we are unpersuaded that the temporary orders in the divorce case definitively adjudicated Frank's rights relative to the Property. Yvonne argues that the temporary orders were binding on Frank and that she is therefore excused from paying him damages for unlawful detainer. But the court in the unlawful detainer trial found that Frank was "not a party to the divorce case" and, in fact, "could not be made a party to the divorce case." The court also noted, without

---

8. In *Ute-Cal Land Development v. Intermountain Stock Exchange*, 628 P.2d 1278 (Utah 1981), the supreme court held that a writ of attachment, which prohibited the lessee from leaving the premises, did not excuse the lessee from paying treble damages when the writ of attachment was served *after* the lessor's notice to quit. *Id.* at 1282–83. There, the lessee was found guilty of unlawful detainer because the lessee could have vacated "when the notice to quit was first served" but did not. *Id.* at 1282. Similarly, the court orders here, which Yvonne claims excuse her from paying damages, were entered after Frank's notice to quit. Though Yvonne was given temporary possession of the Property, she was free to vacate at any time. If the lessee in *Ute-Cal* was guilty of unlawful detainer, Yvonne must be as well.

objection, that "everyone agrees" that he was not actually a party.[9] Thus, Yvonne's possession during the divorce proceedings may have been lawful vis-à-vis her husband, but that does not mean she lawfully possessed as between herself (a tenant) and Frank (the landowner). *See Osguthorpe*, 2010 UT 29, ¶ 22.

¶39    And even if the temporary orders bound Frank, Yvonne does not explain how that would excuse her from liability for damages for unlawful detainer. Yvonne cites *Iota LLC v. Davco Management Co.*, 2016 UT App 231, 391 P.3d 239, in which the court held that "the orderly and expeditious administration of justice by the courts requires that an order issued by a court with jurisdiction over the subject matter and person *must be obeyed by the parties* until it is reversed by orderly and proper proceedings." *Id.* ¶ 16 (emphasis added) (cleaned up). But this does not answer how an order granting temporary possession of property in one action affects the relief another party may receive in a different proceeding. The court in *Iota* spoke only in terms of compliance with an order, and here, Petter (and Frank for that matter) complied with the divorce court's orders granting Yvonne temporary possession of the Property. Therefore, *Iota* does not help Yvonne.

---

9. Until this appeal, Yvonne did not contend that Frank was a party to the temporary orders. Even in her motion for a new trial, Yvonne asserted that "Frank was added as a party" to the divorce proceedings but "was subsequently removed as a party." Thus, the argument that Yvonne is not liable for unlawful detainer because Frank was bound by the temporary orders was not preserved for appeal. *See Blanch v. Farrell*, 2018 UT App 172, ¶ 17, 436 P.3d 285 ("To preserve an issue, the appellant must present it to the district court in such a way that the court has an opportunity to rule on it." (cleaned up)).

¶40    Third, as recognized by the trial court, the "unlawful detainer statute itself contemplates that a court may enter an order allowing a person to remain in possession of property, but notwithstanding such an order, the statute still provides for treble damages against that person if that person is ultimately found to be in unlawful detainer." (Citing Utah Code Ann. §§ 78B-6-810(2)(b)(i), 78B-6-811(3).) In other words, the statute allows for a determination of a right to possess; it does not purport to eliminate damages if the person given temporary occupancy is ultimately deemed to be without rights to the property. Yvonne relies on a concurrence in *Bichler v. DEI Systems, Inc.*, 2009 UT 63, 220 P.3d 1203, to argue otherwise, but *Bichler* is silent about whether a party given temporary possession can ultimately be held liable for unlawful detainer damages.[10] *See id.* ¶ 41 (Nehring, J., concurring).

¶41    Yvonne argues that this reading of the statute is unfair. It is not, and the facts of this case illustrate why. As the trial court recognized, the unlawful detainer statute contains a "significant statutory safety valve that is designed to protect against excessive damages." Specifically, the statute requires that "the court shall expedite the proceedings" and "shall begin the trial within 60 days after the day on which the complaint is served, unless the parties agree otherwise." Utah Code Ann. § 78B-6-810(1). Yvonne, however, made no attempt to resolve the

---

10. Our reading of the statute is consistent with the use of preliminary injunctions. When a court preliminarily enjoins a party from taking an action, it does not purport to immunize the protected party from paying any damages that may occur if the injunction was wrongfully entered. *See Mountain States Tel. & Tel. Co. v. Atkin, Wright & Miles, Chartered*, 681 P.2d 1258, 1262 (Utah 1984) ("An injunction is wrongfully issued and recovery on the bond is permissible if it is finally determined that the applicant was not entitled to the injunction.").

issue of possession expeditiously. Yvonne was entitled under the statute to a hearing within 60 days of being served with Frank's complaint, *see id.*, but instead chose to move for three continuances, which pushed the date for trial from December 2010 to May 2012. Even after being found liable for unlawful detainer, Yvonne continued to reside at the Property for another three years, more than doubling the amount of damages. The trial court considered the "procedural history and the machinations of this case" to find an "unreasonable delay in the resolution of this case that takes a relatively manageable amount of damages," i.e., approximately 60 days of rental value, "to an enormous amount of damages," i.e., approximately 2,653 days of rental value. We see no error in that conclusion.

¶42    In sum, Yvonne proceeded at her own risk when she gambled a treble damage award on winning her quiet title action and subsequently on vacating the trial court's decision in the unlawful detainer action. We affirm the trial court's award of unlawful detainer damages to Frank.

## II. New Trial on Damages

¶43    A trial court may grant a new trial "to any party on any issue" if, among other reasons, there was an "irregularity in the proceedings" or an "error in law." Utah R. Civ. P. 59(a)(1), (7). Yvonne contends that the trial court abused its discretion when it "permitted [First Expert] to testify" and "compounded this error by *sua sponte* granting a new trial on damages that permitted Frank to not only disclose a new expert but rectify the deficiencies in his previous expert's testimony." We reject this contention.

¶44    For starters, the trial court did not "*sua sponte* grant[] a new trial on damages." Yvonne moved for a new trial, including on damages, after being found liable for unlawful detainer, and she requested that the court "hold such further proceedings as are necessary to accomplish substantial justice in this case." The

trial court granted Yvonne's motion in its entirety, and Frank and Petter later succeeded in narrowing the new trial's scope to the issue of damages. Thus, the court did not order a new trial on its own motion; it ordered the new trial, and defined its scope, based on the parties' motions.

¶45 Further, Yvonne's argument concerning First Expert's ability to testify at the original trial despite not being disclosed misses the mark. In granting a new trial on damages, the court stated that it was "going to make sure that . . . there is not an issue on appeal when this case goes up with respect to the disclosure of any expert testimony." It specifically required Frank to disclose his expert and provide a summary of the expert's opinion. The court also ensured that Yvonne would be given the opportunity to "informally interview" or "depose" Second Expert. Thus, by granting a new trial, the trial court attempted to resolve Yvonne's objections to First Expert's testimony in the original trial by giving her the ability to interview Second Expert and the opportunity to call an expert of her own. "It is well settled that . . . the trial court has broad discretion to grant or deny a motion for a new trial," and we see no abuse of that broad discretion here. *See Smith v. Fairfax Realty, Inc.*, 2003 UT 41, ¶ 25, 82 P.3d 1064 (cleaned up).

## III. Ratification Instruction

¶46 A trial court's ruling on a jury instruction, though reviewed for correctness, "does not constitute reversible error . . . unless the error is harmful and prejudicial." *Gorostieta v. Parkinson*, 2000 UT 99, ¶ 15, 17 P.3d 1110. Yvonne contends that the trial court erroneously instructed the jury on ratification in the unlawful detainer trial, but she makes only conclusory statements regarding the alleged error's harmfulness. For example, she asserts that she "was not given the opportunity to take countermeasures" against the instruction and that she was

"substantially prejudiced by the untimely submission of the jury instruction."

¶47 A court "must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Utah R. Civ. P. 61. "[A]n error is harmful," thus requiring reversal, "only if the likelihood of a different outcome is sufficiently high as to undermine our confidence in the verdict." *See Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 796 (Utah 1991). It is the appellant's burden to demonstrate that an error affected the outcome. *Steffensen v. Smith's Mgmt. Corp.*, 820 P.2d 482, 489 (Utah Ct. App. 1991), *aff'd*, 862 P.2d 1342 (Utah 1993); *see also Avalos v. TL Custom, LLC*, 2014 UT App 156, ¶ 24, 330 P.3d 727. And in determining whether an error is harmful, we consider, in context, "the totality of the evidence and proceedings." *Avalos*, 2014 UT App 156, ¶ 24.

¶48 Without addressing the merits of the ratification instruction, we conclude that Yvonne has not shown prejudice from the instruction. She has not demonstrated, in light of the entire evidentiary landscape, how a different instruction would have changed the outcome of the trial. Besides conclusory statements that she was "substantially prejudiced," she does not describe how the jury instruction affected her theory of the case. She argues that she "was not given the opportunity to take countermeasures" but never explains what those countermeasures would have been or how they would have been successful. She instead asserts that "it cannot be known" whether the jury improperly relied on the ratification instruction. But it is her burden to tip the scale toward a "reasonable likelihood" of a different result, and she has not met that burden. *See Steffensen*, 820 P.2d at 489 (cleaned up).

IV. Cumulative Error

¶49 We also conclude that Yvonne has not demonstrated cumulative error in relation to the court's handling of certain

evidentiary matters. She argues on appeal, as she did in her motion for a new trial, that the court improperly allowed evidence and argument undermining the Marital Agreements, improperly allowed hearsay testimony from Petter, and erroneously excluded evidence of a second deed between Frank and Petter. These errors, in Yvonne's view, constitute cumulative error requiring reversal.

¶50 We have recognized that a trial court "has broad discretion to admit or exclude evidence." *Anderson v. Larry H. Miller Commc'ns Corp.*, 2015 UT App 134, ¶ 30, 351 P.3d 832 (cleaned up). And as noted above, an appellant "must shoulder the burden of demonstrating both error by the district court and prejudice, i.e., that there is a reasonable likelihood that a different result would have been reached absent the error." *Id.* (cleaned up). Sometimes, an appellant may show prejudice "when a single error may not constitute grounds for reversal, but many errors, when taken collectively, do." *State v. Martinez-Castellanos*, 2018 UT 46, ¶ 39, 428 P.3d 1038 (cleaned up). But under the cumulative error doctrine, not "all errors accumulate." *Id.* ¶ 40. Rather, "the doctrine will not be applied when claims are found on appeal to not constitute error, or the errors are found to be so minor as to result in no harm." *Id.* (cleaned up).

¶51 Yvonne has not shown that the trial court's evidentiary decisions adversely impacted the outcome of the case. She asserts that "while the district court instructed the jury not to consider the fairness of the [Marital Agreements], this instruction was not sufficient to cure the prejudice." (Citing *Loofbourow v. Utah Light & Ry.*, 94 P. 981, 983 (Utah 1908).) But she does not explain how the testimony and argument she identifies harmed her case or why the jury instruction was insufficient to remedy any harm. *See Avalos v. TL Custom, LLC*, 2014 UT App 156, ¶ 25, 330 P.3d 727 ("In some instances, jury instructions may cure any error resulting from the improper admission of certain evidence."). The primary issue at trial was

whether Yvonne executed the quitclaim deed under duress; the jury was not tasked with interpreting the Marital Agreements or determining who owned the funds placed in Yvonne's bank account. Thus, we are not convinced that the alleged error in allowing evidence to undermine the Marital Agreements negatively affected the proceedings.

¶52    As to the other alleged errors, Yvonne does not meaningfully address the trial court's decision. The court already determined that, even assuming there were errors, there was no prejudice flowing from its evidentiary decisions. In vacating the previous order granting Yvonne a new trial, the court observed that the alleged hearsay testimony was "peripheral and did not have any meaningful effect on the jury's verdict." As for the second deed between Frank and Petter, the court found that it was "a collateral issue" and that "the risk of confusion to the jury [was] too great." By not even challenging those findings, Yvonne has given us no reason to doubt the trial court's evidentiary decisions. *See Utah Physicians for a Healthy Env't v. Executive Dir. of the Utah Dep't of Envtl. Quality*, 2016 UT 49, ¶¶ 18–19, 391 P.3d 148 (discussing an appellant's burden of persuasion to "actually address the alleged errors" in the lower court's decision).

¶53    Thus, without individually identifying harm resulting from these alleged errors, Yvonne cannot show that the errors accumulate for purposes of the cumulative error doctrine. *See Martinez-Castellanos*, 2018 UT 46, ¶ 40. We therefore will not reverse on that basis.

### V. Summary Judgment on Fraudulent Transfer

¶54    Summary judgment is appropriate "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). To successfully oppose a motion for summary judgment, the nonmovant has the duty "to analyze the

evidence" and "*show* that it create[s] a genuine issue for trial." *Stichting Mayflower Mountain Fonds v. United Park City Mines Co.*, 2017 UT 42, ¶ 42, 424 P.3d 72. A court is not obligated "to look beyond [the nonmovant's] bald statements to identify supporting evidence buried somewhere in the record." *Id.* ¶ 43. The trial court here determined there were only three "potentially fraudulent conveyances" and concluded that the "undisputed facts show[ed] that there was reasonably equivalent value exchanged," which defeated Yvonne's fraudulent transfer claim.

¶55 Yvonne contends that "the district court erred in granting summary judgment on [her] fraudulent transfer" claim against Frank and Petter. But Yvonne does not engage with the elements of a fraudulent transfer claim or with the court's specific determination that there were no fraudulent transfers because the undisputed facts show that reasonably equivalent value was exchanged for the only potentially fraudulent conveyances she identified.

¶56 Rule 24 of the Utah Rules of Appellate Procedure requires a party to "explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal." Utah R. App. P. 24(a)(8). "An issue is inadequately briefed if the argument merely contains bald citations to authority without development of that authority and reasoned analysis based on that authority." *Bank of Am. v. Adamson*, 2017 UT 2, ¶ 11, 391 P.3d 196 (cleaned up). The duty to develop an argument belongs to the party; it "may not simply point toward a pile of sand and expect the court to build a castle." *See Salt Lake City v. Kidd*, 2019 UT 4, ¶ 35, 435 P.3d 248. There is no "bright-line rule determining when a brief is inadequate," but "an appellant who fails to adequately brief an issue will almost certainly fail to carry its burden of persuasion on appeal." *Adamson*, 2017 UT 2, ¶ 12 (cleaned up).

¶57 Yvonne cites no authority in the portion of her opening brief alleging error in the trial court's summary judgment decision. She does not engage with her burden under rule 56 of the Utah Rules of Civil Procedure or the elements of a fraudulent transfer claim. She instead insists that "when all reasonable inferences are viewed in the light most favorable to [her]," there is sufficient evidence to create a disputed issue of fact on the merits of her claim. But without explaining the substantive law, Yvonne cannot show that her alleged factual disputes are material. *See* Utah R. Civ. P. 56(a) (requiring no genuine dispute as to "any *material* fact" (emphasis added)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("As to materiality, the substantive law will identify which facts are material."). Thus, Yvonne has not met her burden of persuasion. *Adamson*, 2017 UT 2, ¶ 12.

## VI. Attorney Fees

¶58 Attorney fees are generally recoverable only if authorized by statute or contract. *Gregory & Swapp, PLLC v. Kranendonk*, 2018 UT 36, ¶ 47, 424 P.3d 897. Yvonne contends that she is entitled to attorney fees under the Marital Agreements and that the trial court erred in not awarding them to her. She does not, however, address all the bases for the trial court's decision to deny her fees.

¶59 "Our rules of appellate procedure place the burden on the appellant to identify and brief any asserted grounds for reversal of the decision below." *Kendall v. Olsen*, 2017 UT 38, ¶ 12, 424 P.3d 12. Accordingly, "we will not reverse a ruling of the district court that rests on independent alternative grounds where the appellant challenges [less than all] those grounds." *Id.* (cleaned up).

¶60 The trial court gave three reasons for its decision denying Yvonne her attorney fees. First, it concluded that "the terms of the attorneys' fee provision in the [Marital Agreements] do not

obviously apply to the dispute in this case." Second, it concluded that Yvonne was not a prevailing party. Third, it concluded that Yvonne was not entitled to attorney fees because she had represented herself at trial. *See Total Restoration, Inc. v. Merritt*, 2014 UT App 258, ¶ 16 n.1, 338 P.3d 836 (explaining that pro se litigants are not entitled to attorney fees). Yvonne only briefly addresses the first two reasons; she does not address the third reason until her reply brief.

¶61   Yvonne's failure to engage with the court's reasoning until the reply brief is fatal. *Kendall*, 2017 UT 38, ¶ 13. Both the supreme court and this court "have consistently held that issues raised by an appellant in the reply brief that were not presented in the opening brief are considered waived and will not be considered." *Id.* (cleaned up); *see Blanch v. Farrell*, 2018 UT App 172, ¶ 31 n.6, 436 P.3d 285. Because Yvonne did not challenge *all* the independent bases for the trial court's decision to deny attorney fees in her opening brief, we will not reverse the trial court on this issue. *See Kendall*, 2017 UT 38, ¶¶ 12–13.

CONCLUSION

¶62   We conclude that none of the asserted errors Yvonne identifies require reversal. First, nothing in the unlawful detainer statute excuses Yvonne from paying damages to Frank based on the temporary orders issued approximately ten months after she was asked to quit the premises. Second, the trial court did not abuse its discretion in granting a new trial on damages in response to the parties' briefing. Third, Yvonne has not shown prejudice from the trial court's decision to give a ratification instruction. Fourth, Yvonne has not shown cumulative error in the trial court's handling of certain evidentiary matters because none of the individual errors she points to conceivably affected the outcome of the unlawful detainer trial. Fifth, Yvonne has not met her burden of persuasion on her claim that the trial court mistakenly granted summary judgment on her fraudulent

transfer claim. Finally, Yvonne has not addressed all the bases for the trial court's denial of her motion for attorney fees and has accordingly placed that issue beyond appellate review. We therefore affirm.

——————